931 P.2d 1115

**Jane DOE, a single person, Plaintiff–Appellant,**

v.

**John ROE and Jane Roe, husband and wife, Defendants–Appellees.**

**No. 1 CA–CV 94–0057.**

Court of Appeals of Arizona, Division 1, Department D.

Aug. 8, 1996.

Review Granted Feb. 26, 1997.

Hofmann, Salcito & Stevens by Margaret F. Dean, Phoenix, for Plaintiff–Appellant.

Renaud, Cook, Videan, Geiger & Drury, P.A. by William W. Drury, Jr., Steven G. Mesaros and Diane Mihalsky, Phoenix, for Defendant–Appellee John Roe.

Broening, Oberg & Woods by Jerry T. Collen and Neal B. Thomas, Phoenix, for Defendant–Appellee Jane Roe.

## OPINION

SULT, Judge.

We must determine whether the trial court erred in entering summary judgment against Appellant, Jane Doe, on the ground that the statute of limitations barred her cause of action against her parents, Appellees John and Jane Roe, for her father's alleged sexual abuse of Doe when she was a minor.[1] We view the facts favorably to Appellant and determine *"de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Gonzalez v. Satrustegui,* 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993).

## FACTS AND PROCEDURAL HISTORY

Jane Doe is the daughter of John and Jane Roe. Doe claims that beginning when she was about eight years old, and continuing until she was fifteen, her father sexually abused her. Doe also claims that this experience was so traumatic that as a child she developed psychological coping mechanisms which caused her to completely repress the memory of this abuse. Her first recollection was a "flashback" which occurred on July 10, 1989, when she was thirty four years old. This recollection was triggered by a television program discussing childhood incest and Doe realized she had been sexually abused by her father. Doe became extremely dis-

traught as a result of this flashback and immediately sought psychological counseling.

Although Doe continued counseling from the date of the first flashback, she initially denied the validity of her memory of abuse and did not again discuss specifics of the abuse with her counselor until six months later. In May of 1990, Doe remembered additional incidents of abuse which she reported to her counselor in early June of 1990. These memories were so painful and created such strong feelings of shame and guilt that the next day Doe threatened suicide. The counselor arranged for Doe's admission to the psychiatric ward of a New York hospital, but Doe discharged herself against medical advice two days later on June 9, 1990. Doe then flew to visit her parents in Phoenix and confronted them for the first time with her accusations of abuse.

After Doe returned to New York, she continued in counseling. Because of the stress and the suicidal feelings she experienced as a result of her continuing recall of abuse, Doe quit her job in August of 1990, moved to Seattle, Washington, and continued counseling there. Doe attempted to include her parents in her counseling but they refused.

Doe filed this suit against her parents on May 13, 1992. The Roes moved for summary judgment on the ground that Doe's complaint was barred by the statute of limitations and the trial court agreed. Doe timely appealed.

## DISCUSSION

In Arizona, a plaintiff must file suit for personal injuries within two years after the cause of action accrues. Arizona Revised Statutes Annotated ("A.R.S.") section 12–542 (1992). Because the alleged abuse in this case occurred when Doe was a minor, the limitations period was tolled until she reached age 18. A.R.S. § 12–502(A) (1992). However, Doe's complaint is *prima facie* untimely because she filed suit more than two years after her eighteenth birthday.

---

1. To protect the parties, the trial court amended the caption to use fictitious names, and sealed the record.

The statute would nevertheless not bar her action if Doe can establish some reason why the statute should not apply in the particular circumstances of this case. In this connection, Doe raises three grounds. She first argues that she was of unsound mind within the two year period before filing the action and A.R.S. section 12–502(A) (1992) tolled the statute until this disability was removed. She next argues that Roes are estopped from claiming the benefit of the statute of limitations since they caused her mental impairment. Finally, she argues that she did not "discover" the cause of action until less than two years before filing the action. The Roes dispute these assertions and additionally argue that Doe is attempting to tack the disabilities of minority, unsound mind, and "discovery" in violation of the anti-tacking statute, A.R.S. section 12–503 (1992).

### 1. Disability of Unsound Mind

■ Arizona law recognizes that a person who is of "unsound mind" at the time a cause of action accrues is under a legal disability, and the statute of limitations does not begin to run until removal of that disability. A.R.S. § 12–502(A). Doe argues that her father's abuse created a mental impairment which both caused her to repress the memory of the abuse and, when the memories surfaced, made her depressed, suicidal, and unable either to work or to pursue legal remedies against her father. Doe invites this court to adopt a broad definition of the term "unsound mind" which would include the mental impairment she describes.

The Arizona Supreme Court has recently decided this issue adversely to Doe's position. In *Florez v. Sargeant*, 185 Ariz. 521, 917 P.2d 250 (1996) that court held that the disabling psychological effects of child abuse do not constitute an "unsound mind" under section 12–502(A) where the victims were able to function on a day-to-day basis and manage their ordinary affairs. There is no meaningful distinction between the arguments presented in *Florez* and those presented by Doe in this matter. Moreover, the record here discloses that even more so than the victims in *Florez*, Doe was able to manage her affairs

and understand her legal rights. She graduated from college, supported herself, worked as a stock-trader, and was promoted to a vice president position, a position she held at the time her memories surfaced. Following her first memory, she continued to support herself and work at her job until she voluntarily quit and moved to Seattle. In Seattle, she managed to budget her savings and do whatever else was necessary to support herself while she continued her therapy for her psychological problems. We conclude that there is no genuine issue of material fact that Doe was not of "unsound mind" for purposes of tolling the statute of limitations. *See also* Annot., *Posttraumatic Syndrome as Tolling Running of Statute of Limitations*, 12 A.L.R.5th 546 (1993); Annot., *Running of Limitations Against Action for Civil Damages for Sexual Abuse of Child*, 9 A.L.R.5th 321 (1993).

### 2. Estoppel

■ Doe suggests that because her father's action caused her mental impairment he should be estopped from asserting the statute of limitations. To claim estoppel or equitable tolling in this context, Doe must show her parents committed some positive act, in addition to the claimed abuse, that either concealed Doe's cause of action or induced her to forbear from filing suit. *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 162, 871 P.2d 698, 709 (App.1993); *see Smith v. Smith*, 830 F.2d 11 (2d Cir.1987) (no estoppel where no evidence showing abuser committed some act that prevented the victim from filing suit); *Bowser v. Guttendorf*, 373 Pa.Super. 402, 541 A.2d 377 (1988) (insufficient allegations that defendant's acts deceived victim or concealed actions); *Snyder v. Boy Scouts of America*, 205 Cal.App.3d 1318, 253 Cal.Rptr. 156 (1988) (no estoppel by induced delay: boy scout leader's influence terminated long before victim filed suit). On our examination of the record, we find no evidence to support Doe's suggestion of estoppel.

### 3. Discovery Rule

■ Arizona follows the rule that "a plaintiff's cause of action does not accrue until the

plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause [of action]." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co.,* 182 Ariz. 586, 588–89, 898 P.2d 964, 966–67 (1995); *Kenyon v. Hammer,* 142 Ariz. 69, 76 n. 6, 688 P.2d 961, 968 n. 6 (1984); *Kowske v. Life Care Centers of America, Inc.,* 176 Ariz. 535, 537, 863 P.2d 254, 256 (App.1993); *Mayer v. Good Samaritan Hospital,* 14 Ariz.App. 248, 252, 482 P.2d 497, 501 (1971). Arizona has not yet had occasion to determine whether the discovery rule should apply where the allegation is that childhood sexual abuse caused repressed memory of the abuse, thereby postponing knowledge of the abuse into adulthood. The better reasoned authorities from other jurisdictions indicate that the rule should apply. *See, e.g., Ault v. Jasko,* 70 Ohio St.3d 114, 637 N.E.2d 870 (1994) (discovery rule applies: repressed memory caused by childhood sexual abuse tolls statute of limitations until memory revived); *Mary D. v. John D.,* 264 Cal.Rptr. 633 (App. 1989), *review dismissed,* 275 Cal.Rptr. 380, 800 P.2d 858 (Cal.1990) (same); *Olsen v. Hooley,* 865 P.2d 1345 (Utah 1993) (adds requirement of independent corroboration); *Johnson v. Johnson,* 701 F.Supp. 1363 (N.D.Ill.1988) (applies discovery rule in a case where an adult survivor had no memory of childhood sexual abuse until after the expiration of the statute of limitations);[2] *see also,* Note, *Tolling the Statute of Limitations in Actions Brought by Adult Survivors of Childhood Sexual Abuse,* 33 Ariz. L.Rev. 427 (1991); Annot., *Emotional or Psychological "Blocking" or Repression as Tolling Running of the Statute of Limitations,* 11 A.L.R.5th 588 (1993).

Arizona does not look with favor on the defense of the statute of limitations, *Insurance Co. of North America v. Superior Court,* 166 Ariz. 82, 86, 800 P.2d 585, 589 (1990), and the discovery rule developed as a tool to mitigate the harshness of applying the statute to a plaintiff who could not have known any of the facts underlying the cause of action. *Gust, Rosenfeld,* 182 Ariz. at 588, 898 P.2d at 966 (applying discovery rule to breach of contract cases). The rationale behind the rule is that it is unjust to deprive a plaintiff of a cause of action before he has a reasonable basis for believing that a claim exists. *Id.* at 589, 898 P.2d at 967.

These principles underlay our decision in *Ulibarri* to apply the discovery rule where an adult patient claimed that her psychiatrist sexually exploited her and concealed this exploitation from her through hypnosis. 178 Ariz. at 158, 871 P.2d at 705. We see no meaningful distinction between that case and the instant case where the concealment, in the form of repressed memory, arose directly out of the acts alleged to have caused the harm complained of. We agree with the authorities from the other jurisdictions cited above and hold that the discovery rule applies to cases of repressed memory alleged to arise from childhood sexual abuse.[3]

■ The next question is whether the trial court correctly applied the rule here in determining that Doe's claim was barred. Doe's own affidavit establishes that on July 10, 1989, while watching a television program on incest, she "realized that I had been sexually abused by my father." She became hysterical and immediately sought and obtained counseling that day. To the counselor Doe "disclosed that I remembered being sexually abused by my father." The counselor's affidavit states that within six months of this initial disclosure, in early 1990, Doe was talking about the specifics of the abuse.

■ In Arizona, the discovery rule delays accrual of a cause of action only until the claimant knows, or by the exercise of reasonable diligence should know, that the defendant harmed her. *Mayer,* 14 Ariz.App. at

**2.** In a later decision in the same case, the district court found the complaint time-barred based on a recently amended statute of limitations. 766 F.Supp. 662 (N.D.Ill.1991). The Illinois Appellate Court, however, held the statute could not be applied retroactively. *Phillips v. Johnson,* 231 Ill.App.3d 890, 174 Ill.Dec. 458, 599 N.E.2d 4 (1992).

**3.** The application of the discovery rule to claims of repressed memory is not without criticism and some jurisdictions have refused to apply it in that context. *See e.g., Lemmerman v. Fealk,* 449 Mich. 56, 534 N.W.2d 695 (1995); *Tyson v. Tyson,* 107 Wash.2d 72, 727 P.2d 226 (1986) (result changed by statute); *Ault v. Jasko,* 70 Ohio St.3d 114, 637 N.E.2d 870, 875 (Wright, J., dissenting).

252, 482 P.2d at 501. It would appear that Doe met this test on July 10, 1989, or at the latest within six months of that date, when she began discussing specifics of the abuse with her therapist. Doe argues, however, that notwithstanding her initial memories, she was not able to accept them as true until after extensive therapy. Therefore, she reasons, she did not discover the "facts" giving rise to her claim until she was within two years of the filing of her complaint.

We reject this argument for the reason that it rests on the premise that notwithstanding Doe knew of her father's actions and the effect on her of those actions, she was *psychologically* unable to accept the truth of the memories. With this argument, Doe is in effect creating an additional category of "unsound mind" under A.R.S. section 12–502(A), something our supreme court has already declined to do. *Florez v. Sargeant*, 185 Ariz. at 528–29, 917 P.2d at 257–58 (1996). *See O'Neal v. Division of Family Services*, 821 P.2d 1139, 1142–43 (Utah 1991) (where claimant possessed knowledge of the facts necessary to bring the claim, psychological inability to reveal the abuse did not constitute "mental incompetence" of the type sufficient to toll the running of the statute).

■ Moreover, it is not necessary for a claimant to know all the facts for the statute to begin to run; rather, all that is required is that he know enough facts as would prompt a reasonable person to investigate and discover the full extent of the claim. *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 264, 266, 678 P.2d 449, 451 (App.1983), *approved in part, vacated in part*, 139 Ariz. 242, 678 P.2d 427 (1984). Here, the record is uncontroverted that by July 1989, or at the latest early 1990, Doe knew that her father had sexually abused her as a child. The resulting hysteria and involvement in counseling establishes that she also knew, or should have known, that she was injured by this conduct. Thereafter, she had two years under the statute to further investigate, discover, and file her claim. She did not do so and the trial court was correct in finding that her claim was time barred.[4]

■ The dissent raises two issues. The first concerns Doe's claim against her mother and asserts that the trial court should not have granted summary judgment in favor of the mother. The matter was presented to the trial court as a joint motion for summary judgment on behalf of both parents, based on the statute of limitations, and asserting that Doe discovered the sexual abuse on July 10, 1989. In her response thereto, Doe did not attempt to separate her claims and argue the dissent's theory why her claim against her mother was discovered at a later time and therefore not barred by the statute. Rather, she presented the same arguments to the trial court that she has presented to this court, none of which focused separately on the claim against her mother and none of which argued for a separate finding on this claim.

■ It is true, as the dissent points out, that we review a grant of summary judgment *de novo*. This rule is not without its limits, however. When a party does not raise an issue in its appellate brief and support it by a separate argument, the issue is waived and we do not consider it. *Jones v. Burk*, 164 Ariz. 595, 597, 795 P.2d 238, 240 (App.1990). We do not have an obligation or a mandate to raise an issue which the parties have not and then decide the case on that issue with no notice to the parties and no briefing or argument from them. If there was legal error in the trial court's ruling aside from what Doe argues here, it was Doe's responsibility to

---

4. Authority from other jurisdictions supports this holding. *Franke v. Geyer*, 209 Ill.App.3d 1009, 154 Ill.Dec. 710, 568 N.E.2d 931 (1991) (where plaintiff aware of the abuse and that she was injured by it, discovery rule does not toll the statute of limitations until victim is aware of the extent and cause of psychological injuries); *Doe v. R.D.*, 308 S.C. 139, 417 S.E.2d 541 (1992) (limitations period not tolled where son was aware of father's molestation, even if he were not aware of the extent of his injuries); *Byrne v. Bercker*, 176 Wis.2d 1037, 501 N.W.2d 402 (1993) (statute barred action where claimant failed to timely file after she knew the fact and nature of her injuries and knew that her father's conduct was the cause of those injuries, even though she had not been able through therapy to "shift the blame" to her father until within the time period for filing.)

point this out to us. She has not done so and has therefore waived her right to do so.

The dissent also proposes an application of the discovery rule which would permit Doe to sue, presumably in separate actions if she so chose, each time she experienced recovered memory of a specific incident of childhood abuse. The dissent argues that since each incident represents a separate tort, an independent application of the limitations statute should be applied each time such an incident is remembered, resulting in a separate accrual date for that incident. The dissent justifies this approach by arguing that recovery of repressed memory is often a lengthy process, even with the exercise of "due diligence," so that the "investigation" standard of cases like *Richards v. Powercraft Homes, Inc., supra*, is not workable for this type of case.

We disagree with the dissent for several reasons. Foremost is that, like the first issue raised by the dissent, this issue has not been raised, briefed or argued by Doe. Moreover, we question whether this record would support application of the dissent's proposal. In her complaint, Doe alleged merely an unspecified number of sexual assaults beginning in 1967 and promised to provide specific factual details at trial. In the summary judgment proceedings, the affidavits of Doe and her therapists referred several times to "new memories" surfacing at various times, such as in late May and June of 1990. However, nowhere does Doe specify the content of these memories and, consequently, we don't know whether the memories were of additional specific incidents of abuse or, for example, were memories of Doe's pain, humiliation, or the like. Only the former would trigger the application of the discovery rule but without specification of the nature of the "new memories", even the dissent's proposal cannot save Doe's claim.

We also reject the dissent's proposal because of the effect it would have on the statute of limitations and its underlying policy and purposes. In *Ritchie v. Grand Canyon Scenic Rides,* 165 Ariz. 460, 799 P.2d 801 (1990), our supreme court stated:

Statutes of limitations afford substantial rights to prospective defendants. The protection they provide is an indication of a public policy that encourages injured parties to pursue redress in an expeditious manner. The legitimate purposes of statutes of limitations are threefold: (1) to protect defendants from stale claims; (2) to protect defendants from insecurity—economic, psychological, or both; and (3) to protect courts from the burden of stale claims.

*Id.* at 464, 799 P.2d at 805 (citations omitted). As we understand the effect of the dissent's proposal, a claimant could recover memory of an incident of abuse and sue thereon. This would not be the end for the defendant, however. If the claimant then recovered memory of a different incident, even years later, the claimant could then sue the defendant on that incident. This process could go on indefinitely, resulting in a multiplicity of actions with no protection afforded the defendant from the statute of limitations. Such a result is completely contrary to the policy of statutes of limitations as expressed in *Ritchie* and would eviscerate the statute as a defense.

The dissent relies for its proposal on the case of *Nicolette v. Carey,* 751 F.Supp. 695 (W.D.Mich.1990). This case is clearly distinguishable. In interpreting Michigan law, the federal district court relied on the Michigan disability statute which included "insanity" as a disabling condition tolling the running of the statute. Mich. Comp. Laws § 600.5851. Significantly, a disability under this statute tolls the limitations statute until "one year after the disability is removed." *Id.* The district court found that due to the claimant's repression, disassociation and severe depression, she qualified as "disabled." Because she continued to remember incidents of abuse within the time period for filing, her entire claim was timely since her disability was not removed so long as she continued to remember such incidents.

Arizona does not recognize repressed memory as a disability under our statute. *Florez v. Sargeant, supra.* Moreover, the discovery rule in Arizona commences the running of the limitations period based upon an "investigate and discover" standard. It has no provision for further postponement to

await the removal of a psychological disability which may prolong the investigation and discovery period beyond that provided by the applicable statute of limitations. Thus, *Nicolette* provides no support for the dissent's proposal.[5]

The dissent asserts that our holding overlooks the fact that childhood sexual abuse inflicts deep psychological trauma resulting, *inter alia*, in the repressed memory phenomenon. Moreover, the dissent argues that even with due diligence, memory cannot always be timely recovered since it often requires painful long-term counseling. The only answer, the dissent then argues, is a change in the discovery rule.

We reject the notion that we are overlooking the trauma of childhood sexual abuse. Our holding applying the discovery rule to such claims is an express recognition of the debilitating impact such acts have on their victims. What we decline to do is judicially amend the statute of limitations by engrafting upon it a variation which would, in effect, substitute the legislatively mandated period expressed therein for an indefinite and unascertainable term. It may well be that two years is simply too short a period of time for this type of case. If a claimant is to have a longer period than two years following the first discovery of childhood sexual abuse, that extension will have to come from the legislature. We do not have the power to make that change.

## CONCLUSION

Because of our disposition of Doe's claim, we need not consider Roe's assertion based on the anti-tacking statute. Having found that there are no genuine issues of material

fact and that Roes are entitled to judgment as a matter of law, we affirm the judgment of the trial court. *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

GARBARINO, P.J., concurs.

LANKFORD, Judge, Dissenting in Part.

The majority holds that the plaintiff's claims arising out of childhood sexual abuse are barred by the statute of limitations as a matter of law. I respectfully but vigorously dissent for this reason: Whether the discovery rule preserves plaintiff's claims is a question of fact for the jury, not a matter of law for the court.[6]

The plaintiff contends that her recall of sexual abuse by her father was repressed. The "substantial majority" of courts hold that the discovery rule preserves the claims of those suffering from repressed memory. *Farris v. Compton*, 652 A.2d 49, 59 (D.C.App. 1994); *Olsen v. Hooley*, 865 P.2d 1345, 1349 (Utah 1993). This is consistent with Arizona's discovery rule, which prevents the period of limitations from running until the plaintiff knew or should have known of the defendant's conduct. *Kowske v. Life Care Centers of America*, 176 Ariz. 535, 537, 863 P.2d 254, 256 (App.1993). The plaintiff must know or have reasonable opportunity to know "both the what and who elements of causation," *Lawhon v. L.B.J. Institutional Supply Inc.*, 159 Ariz. 179, 183, 765 P.2d 1003, 1007 (App.1988), and the fact of injury. *Gust, Rosenfeld & Henderson v. Prudential Ins. Co.*, 182 Ariz. 586, 591, 898 P.2d 964, 969 (1995).

In this appeal, in which we review a summary judgment rejecting all of the plaintiff's claims, the issue is whether genuine ques-

5. *Nicolette* has subsequently been severely limited in its application to Michigan claimants by the Michigan Supreme Court in *Lemmerman v. Fealk*, 449 Mich. 56, 534 N.W.2d 695 (1995). There, the court refused to apply the discovery rule to repressed memory of childhood sexual abuse. It stated:

> Adoption of the plaintiffs' position would leave a determination of the onset of a limitation period an open question within the subjective control of the plaintiff. Placing a plaintiff in this discretionary position to allege the onset of the disability of repressed memory and the

termination of that condition within an applicable grace period would 'vitiate the statute of limitations as a defense' and is a circumstance we have rejected in the past.

534 N.W.2d at 703. The court did not specifically disapprove *Nicolette* but distinguished it as a case where refusing to apply the statute of limitations may have been justified because there was independent corroboration of the abuse. *Id.*, n. 15.

6. I agree with the majority's conclusions regarding disability and estoppel.

tions of fact exist that plaintiff should have known of her causes of action more than two years before she filed this action. I dissent because such questions do exist and require that a jury decide whether the statute of limitations bars the claims.

Plaintiff asserted claims against two defendants: against her father for the abuse and against her mother for negligence in failing to protect her. Although the majority treats them as identical, these are separate claims raising somewhat different discovery rule questions.

The claim against the mother is that she negligently failed to protect plaintiff from the abuse. This claim did not necessarily arise at the same time as the claim against the father for the abuse. As the plaintiff's complaint recognized, the mother was not negligent unless and until she was aware of, or should have been aware of, the father's abuse.

*Doe v. Board of Educ. of Hononegah Community High School Dist. No. 207*, 833 F.Supp. 1366 (N.D.Ill.1993) illustrates that the plaintiff's cause of action against her mother did not necessarily accrue at the same time as her claim against her father. In *Doe,* the plaintiff was a student who allegedly had been sexually abused by a teacher. She sued the school board and school district for civil rights violations for having failed to report sexual abuse and to discipline the teacher, and for having discouraged and concealed abuse complaints. *Id.* at 1371. The court denied a motion to dismiss these claims, holding that even if the abuse claim against the teacher was barred, the claims against the school defendants were not:

> If this were a claim against the abuser based entirely on injuries arising from the sexual abuse, plaintiff's cause of action would certainly be time barred.

The theory of plaintiff's case, however, is not simply that she was sexually abused but that she was abused by a teacher under circumstances created by defendants. In other words, had it not been for defendants' alleged failure to properly take action to prevent abuse by the teacher, plaintiff would not have been abused by him. While she may have known that she

was abused, there is nothing in the complaint to remotely suggest that she knew or should have known of the alleged acts or omissions on the part of defendants.

*Id.* at 1376.

Similarly, plaintiff's claim against her mother accrued when she knew or should have known that her mother had failed to protect her. That depends in part on when the plaintiff discovered that the mother knew of the abuse and thus had an opportunity to intervene to protect the child.

The parties' motion papers did not discuss when the plaintiff's cause of action against her mother arose. The mother's summary judgment motion on the limitations issue merely joined in the father's motion. The limitations issues applicable to the two defendants differed, however. The mother's motion failed to address the issues applicable to the claim against her and as a result, the mother's motion failed to demonstrate her entitlement to judgment as a matter of law.

The majority argues that plaintiff's failure to point out the defect in the mother's summary judgment motion warrants entry of judgment against the plaintiff. This is not correct. The summary judgment movant bears the burden of showing that she is entitled to judgment:

> The burden of persuading the trial judge that summary judgment was warranted fell to the bank as the party seeking judgment. If the bank's motion failed to make a prima facie case—either by omitting evidence of essential elements of its claim or providing evidence which supported conflicted inferences on a material issue—then there was no basis for awarding summary judgment. Whether or not the Allyns filed a written response to the motion was not decisive.

*United Bank of Arizona v. Allyn,* 167 Ariz. 191, 197, 805 P.2d 1012, 1018 (App.1991). A movant cannot, for example, obtain judgment by arguing that her motion should be granted because "the moon is in the seventh house and Jupiter is aligned with Mars, and thus all the signs are favorable." That is not a prima facie motion. A motion that fails to show entitlement to judgment must be denied.

Because we review summary judgments de novo, *id.*, we must reverse a judgment that is unwarranted.

That is the case here. The mother filed a motion that merely joined the father's motion. However, the father's motion addressed the limitations issues that applied to him. The issues pertaining to the claims against the mother were very different. The mother never addressed these issues, and thus failed to make a prima facie motion for summary judgment. Whether the plaintiff pointed it out or not is immaterial; the deficiency in the mother's motion is apparent and we cannot ignore it.

The claims against the father are also not subject to summary judgment, but for different reasons. Preliminarily, I note that each instance of abuse gives rise to a separate cause of action. *Doe v. Doe*, 671 So.2d 466, 469–70 (La.Ct.App.1995).[7] Thus, the limitations and discovery rule questions must be answered with respect to each incident.

The issue is whether there is any dispute of fact that plaintiff knew or should have known of her claims more than two years before she filed the action. The record indicates that plaintiff was aware of at least one incident in July 1989, more than two years before she filed. This claim is barred.

However, plaintiff's awareness of one incident does not imply knowledge of others.[8] This is illustrated by *Nicolette v. Carey*, 751 F.Supp. 695 (W.D.Mich.1990), a case involving the tolling of the statute based on the "disability" of repressed memory. In *Nicolette*, a sexual abuse victim who allegedly suffered from repressed memories of abuse had become aware of various incidents at different times. The court held that the disability was not terminated until plaintiff recovered her entire recollection. "[T]he continued repression of further incidents within the tolling period saves her cause of action from lapsing." *Nicolette*, 751 F.Supp. at 699.[9] Thus, the fact that a plaintiff recalls one incident does not mean that she recalls all similar incidents or that the discovery rule cannot be applied to unremembered events.

We must therefore carefully examine the record to determine what the plaintiff knew about the defendant's other conduct, and when she knew it. That examination reveals that plaintiff recalled additional incidents of abuse in May 1990 and filed her action in May 1992, within the two year limitations period.

Of course, whether plaintiff's memory was actually repressed and remained unrevived until May 1990 is a question of fact for the jury. *Olsen*, 865 P.2d at 1350; *Hammer v. Hammer*, 142 Wis.2d 257, 418 N.W.2d 23, 27 (App.1987). But that factual question cannot be resolved by summary judgment.

The majority nevertheless appears to argue that plaintiff's claims are barred because her July 1989 recollection placed her on sufficient notice to require further investigation, somehow rendering irrelevant her discovery in May of 1990 of additional incidents. The majority's position apparently is that plain-

---

**7.** The majority argues that this view fails to protect a defendant from multiple actions. Any other rule would destroy a plaintiff's cause of action before it accrued, however. Moreover, viewing separate physical assaults as separate torts merely reflects fundamental tort concepts. The majority's argument distills into nothing more than dissatisfaction with the discovery rule itself. I find no persuasive reason to refuse to apply the discovery rule to each cause of action.

**8.** The majority implies that the record shows that plaintiff recalled many or all of the incidents in early 1990. The record is simply ambiguous, and does not show more than that plaintiff initially recalled one incident. Because the facts must be viewed favorably to the plaintiff on review of the summary judgment against her, and because defendants bore the burden of showing their entitlement to judgment, the record cannot

be construed against plaintiff on this point. In this respect, this case contrasts sharply with *Florez v. Sargeant*, 185 Ariz. 521, 528, 917 P.2d 250, 257 (1996), in which the plaintiffs conceded their awareness of the identity and conduct of their abusers.

**9.** The majority's contention that *Nicolette* has been undercut is incorrect, for the case has not been questioned on this point. Moreover, *Lemmerman v. Fealk*, 449 Mich. 56, 534 N.W.2d 695 (1995) undermines *Nicolette* only by declining to apply both the discovery rule and the disability rule to sexual abuse repressed memory cases. That holding is of no importance for our purposes because it is one that both I and the majority reject: the discovery rule, we hold today, does apply. Thus, *Lemmerman* is unpersuasive.

tiff's discovery of one tort started the limitations period for all torts by the same defendant. This argument is flawed for several reasons.

First, the fact that plaintiff recalled one incident does not mean that she recalled—or that she should have recalled—others. *See Nicolette*, 751 F.Supp. at 699. It is entirely possible that a victim might reasonably think that a remembered incident occurred as an isolated event rather than a part of a series of incidents. No reason consistent with the discovery rule warrants barring an action based on unremembered events.

Second, I find no support for the majority's "investigate and discover" standard in the many Arizona cases applying the discovery rule to tort actions. While the cases refer to the plaintiff's obligation to use reasonable diligence in discovering the facts, this is no more than a restatement of the "should have known" standard of the discovery rule. *See, e.g., Mayer v. Good Samaritan Hospital*, 14 Ariz.App. 248, 250, 482 P.2d 497, 499 (1971) (" 'While the plaintiff certainly must exercise reasonable diligence, to inform himself of the facts and how they relate to each other, the statutes should not begin to run until through reasonable diligence the plaintiff should have reason to know that a claim exists.' ") (citation omitted).

The Arizona case cited by the majority, and similar authorities, merely hold that a plaintiff need not know all the details of a fraud before being charged with sufficient knowledge to commence the limitations period. *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 264, 266, 678 P.2d 449, 451 (App.1983), *vacated in part*, 139 Ariz. 242, 678 P.2d 427 (1984); *see also Alaface v. National Inv. Co.*, 181 Ariz. 586, 591, 892 P.2d 1375, 1380 (App. 1994) ("[Plaintiffs] did not have to know all of the underlying details of the misrepresentation before their cause of action accrued."). This is consistent with, not contrary to, the "should have known" standard of the discovery rule.[10] Arizona courts have adhered consistently to this standard, and it should be applied in this case.

Third, the majority's argument fails even if its "investigate and discover" standard exists. The argument overlooks two things. First, it misses the thrust of plaintiff's argument: As a result of the trauma of her victimization, her psyche repressed the memory of abuse. If that is so, then what "inquiry" should she have undertaken to restore the memory of other incidents after having recalled a single incident? This is not a matter of mere investigation, but one of deep psychological trauma.[11] It is not enough that the victim suspect the abuse; the victim must be able to discover it so that she can sue the abuser. This is a straightforward application of the discovery rule, not an alteration of it as the majority suggests.

The majority's argument also overlooks the evidence that plaintiff did exercise due diligence. As the majority notes, it was through plaintiff's efforts in painful, long-term counseling that she subsequently recalled additional incidents. These efforts were so traumatic that plaintiff became suicidal and required psychiatric hospitalization. How much more diligent could plaintiff have been than this? At the very least, whether plaintiff acted with sufficient diligence is a fact question for the jury.

In my view, the evidence creates issues of fact about plaintiff's discovery of her claims. Should she have known the facts more than two years before she filed her complaint?

---

**10.** To the extent that these cases stand for any broader proposition that conflicts with the discovery rule, I believe they were incorrectly decided.

**11.** The classical psychological responses to incest trauma are numbing, denial, and amnesia.... 'Many, if not most, survivors of child sexual abuse develop amnesia that is so complete that they simply *do not remember that they were abused at all;* or ... they minimize or deny the effects of the abuse so completely that they cannot associate it with any later consequences.' Many victims of incest abuse exhibit signs of Post–Traumatic Stress Disorder ("PTSD"), a condition characterized by avoidance and denial that is associated with survivors of acute traumatic events such as prisoners of war and concentration camp victims.

Jocelyn B. Lamm, *Easing Access to the Courts for Incest Victims: Toward an Equitable Application of the Delayed Discovery Rule,* 100 Yale L.J. 2189, 2194 (1991) (citations omitted).

Only a jury can answer that question. Accordingly, I respectfully dissent.