945 P.2d 1304

A. DOE, a single person,
Plaintiff/Appellant,

v.

MILES INC.; Armour Pharmaceutical
Co.; Baxter Healthcare Corporation;
Alpha Therapeutic Corporation; Rhone–
Poulenc, Inc.; Arizona Board of Re-
gents; University of Arizona; University
of Arizona College of Medicine; State of
Arizona; Dr. James Corrigan and Caro-
lyn Corrigan; St. Joseph's Hospital &
Medical Center; Catholic Healthcare
West, Defendants/Appellees.

Jane DOE, as Personal Representative of
the Estate of B. Doe, deceased child of
Jane Doe, for and on behalf of herself
and on behalf of the Estate, and in her
individual capacity, Plaintiff/Appellant,

v.

MILES INC.; Armour Pharmaceutical
Co.; Baxter Healthcare Corporation;
Alpha Therapeutic Corporation; Rhone–
Poulenc, Inc.; Arizona Board of Re-
gents; University of Arizona; University
of Arizona College of Medicine; State of
Arizona; Dr. James Corrigan and Caro-
lyn Corrigan; St. Joseph's Hospital &
Medical Center; Catholic Healthcare
West, Defendants/Appellees.

Nos. 2 CA–CV 96–0166, 2 CA–CV 96–0167.

Court of Appeals of Arizona,
Division 2, Department A.

Feb. 18, 1997.

Redesignated as Opinion and
Publication Ordered April 9, 1997.

Review Granted Nov. 14, 1997.

**174**

Ibáñez & Wilkinson by Rose Marie Ibáñez, Tucson, for Plaintiffs/Appellants.

Mitten, Goodwin & Raup by Scott J. Hergenroether, Phoenix, for Defendants/Appellees St. Joseph's Hospital and Medical Center and Catholic Healthcare West.

Gallagher & Kennedy, P.A. by Thomas A. Maraz and Todd C. Wiley, Phoenix, for Defendants/Appellees State of Arizona, Arizona Board of Regents, University of Arizona, University of Arizona College of Medicine, James Corrigan, M.D., and Carolyn Corrigan.

Snell & Wilmer, L.L.P. by Daniel J. McAuliffe and Martha E. Gibbs, Phoenix, for Defendants/Appellees Baxter Healthcare Corporation, Miles Inc., Armour Pharmaceutical Company, Rhone–Poulenc, Inc. and Alpha Therapeutic Corporation.

## OPINION

PELANDER, Presiding Judge.

In these consolidated actions, plaintiffs/appellants Jane Doe and her son, A. Doe, contend the trial court erred in granting summary judgment for defendants/appellees on statute of limitations grounds. We disagree and therefore affirm.

We view the evidence in the light most favorable to the parties against whom summary judgment was entered and independently review any questions of law relating to the statute of limitations defense. *Owens v. City of Phoenix*, 180 Ariz. 402, 405, 884 P.2d 1100, 1103 (App.1994); *Zuck v. State*, 159 Ariz. 37, 39, 764 P.2d 772, 774 (App.1988). Jane Doe's twin sons, A. Doe and B. Doe, were diagnosed with mild hemophilia shortly after their births in 1969.[1] Their medically-prescribed treatment from 1978 to 1987 included infusion of "factor VIII concentrate,"[2] a blood coagulant used to control and stop bleeding in hemophiliacs. Both A. and B. contracted human immunodeficiency virus (HIV) from the factor concentrate infusions. B. tested positive for HIV in July 1987 and ultimately died of acquired immune deficiency syndrome (AIDS) in April 1989. A. also was diagnosed with HIV after testing positive in August 1987.[3]

In July 1993, plaintiffs Jane Doe (on behalf of herself and B. Doe's estate) and A.

1. Hemophilia is a genetically-transmitted bleeding disorder characterized by a lack of certain proteins which are essential to blood clotting.

2. Factor concentrates are blood products derived through a process called "fractionation" from mass-pooled human plasma collected from many donors. Due to their multiple-donor sources, factor concentrates posed a much greater risk of transmitting blood-borne diseases than fresh-frozen plasma (FFP) or cryoprecipitate, a product derived from FFP when it thaws. All factor concentrate A. and B. received by infusion from 1978 to 1987 was acquired from defendant/appellee St. Joseph's Hospital in Phoenix and a few other institutions and was prescribed by two Phoenix hematologists whom plaintiffs named as defendants but who are not parties to this appeal.

3. Although A. Doe is HIV-positive, he does not have AIDS or any AIDS-related symptoms.

Doe filed separate actions against defendants/appellees—various producers of factor concentrates ("fractionators") and healthcare providers who allegedly were involved in the hemophilia care of A. and B. Plaintiffs alleged negligence and product liability theories against the various defendants. Defendants eventually moved for summary judgment on the basis that plaintiffs' claims were time-barred under A.R.S. § 12–542. The trial court granted the motions, and this appeal followed.

■■■ We must determine *de novo* whether there are any genuine issues of material fact relating to the limitations defense and whether the trial court erred in applying the law. *United Bank v. Allyn*, 167 Ariz. 191, 805 P.2d 1012 (App.1990). Section 12–542 required that plaintiffs' actions be "commenced and prosecuted within two years after the cause of action accrue[d], and not afterward." Under the common law "discovery rule," a cause of action accrues "when the plaintiff knew or by the exercise of reasonable diligence should have known of the defendants' conduct and therefore the statute of limitations does not begin to run until that time." *Mayer v. Good Samaritan Hosp.*, 14 Ariz.App. 248, 252, 482 P.2d 497, 501 (1971). *See also Vega v. Morris*, 184 Ariz. 461, 463, 910 P.2d 6, 8 (1996). In other words, "the claim is barred two years from when the plaintiff knew or should have known facts giving rise to the claim." *Anson v. American Motors Corp.*, 155 Ariz. 420, 424, 747 P.2d 581, 585 (App.1987).

■■■ Plaintiffs had the burden of establishing that the discovery rule applied to delay the statute of limitations. *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 155, 871 P.2d 698, 702 (App.1993); *Cooney v. Phoenix Newspapers, Inc.*, 160 Ariz. 139, 141, 770 P.2d 1185, 1187 (App.1989). "Once the defendant has established a *prima facie* case entitling him to summary judgment [on a statute of limitations defense], the plaintiff has the burden of showing available, competent evidence that

would justify a trial." *Ulibarri*, 178 Ariz. at 156, 871 P.2d at 703. Plaintiffs failed to sustain that burden here.

■■ The record shows that in 1987, when both A. and B. tested positive for and were diagnosed with HIV, Jane Doe believed they had contracted the virus from factor concentrates. As early as 1983, she also had received, read and retained newsletters and special bulletins which informed her of the link between factor concentrate and HIV/AIDS. Similarly, A. Doe "firmly believed [as of August 1987] that the only possible source of [his] HIV infection was factor concentrate" he had received through infusions. Both Jane and A. attributed B.'s death to AIDS resulting from his HIV, which they in turn linked to the factor concentrate. A. realized at that time that HIV could lead to AIDS, which could kill him. Finally, plaintiffs knew in 1987 of the healthcare provider/defendants' role in A.'s and B.'s hemophilia care and either knew or easily could have discovered who had produced, distributed·and supplied the factor concentrates.

Notwithstanding those undisputed facts, plaintiffs contend their cause of action did not accrue until late 1992, when A. Doe first "saw documents" at a National Hemophilia Foundation meeting and "heard from people that there was reason to believe that the fractionators were negligent with regard to transmission of HIV."[4] It was at that meeting and when he later received additional documents that A. "came to the conclusion that—that there was something wrong." Similarly, before 1992, Jane Doe was unaware of any wrongdoing associated with hemophiliacs becoming infected with HIV after infusion of factor products or that they may have been "defective."

According to plaintiffs, a cause of action for medical negligence does not accrue until the plaintiff knows of, or "reasonably should suspect," defendant's fault, *i.e.*, negligence, breach of duty or other tortious wrongdoing. Because plaintiffs did not realize that defen-

---

4. There is no indication in the record that plaintiffs learned any new "facts" after 1987 about the healthcare provider/defendants' conduct in their care of A. or B.

dants were negligent or otherwise at fault until 1992, they contend filing their suits in July 1993 was timely. We disagree. Accepting plaintiffs' proposition would essentially gut the statute of limitations defense. If commencement of the limitations period depended on a plaintiff's subjectively and fortuitously "discovering" or "realizing" a putative defendant's fault, even long after the plaintiff knew the facts about that defendant's identity and relationship to plaintiff, plaintiff's injury and causation, the defense would be virtually meaningless.

■ As Division One of this court has stated:

> [A] cause of action "accrues" when the plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by a *particular* defendant's negligent conduct. The cause of action does not accrue until the plaintiff knows or should have known of both the *what* and *who* elements of causation.

*Lawhon v. L.B.J. Institutional Supply, Inc.,* 159 Ariz. 179, 183, 765 P.2d 1003, 1007 (App. 1988) (emphasis in original). Those discovery elements existed here more than two years before plaintiffs filed suit in these cases. They knew by 1987 of the injury (HIV), what caused the injury (factor concentrate) and who allegedly caused the injury (various fractionators which produced and distributed the factor concentrate and various healthcare providers who prescribed, provided or recommended factor concentrate for A. and B. or who evaluated its use). That plaintiffs did not subjectively know or have reason to know of defendants' alleged negligence, breach of duty or product defectiveness until 1992 did not postpone accrual of their claims until then. As this court has noted, " '[t]he discovery rule applies to the facts which give rise to the cause of action, not to the legal significance of such facts.' " *Kowske v. Life Care Centers of America, Inc.,* 176 Ariz. 535, 537, 863 P.2d 254, 256 (App.1993), *quoting Insurance Company of North America v. Superior Court,* 162 Ariz.

499, 502, 784 P.2d 705, 708 (App.1989), *vacated in part on other grounds,* 166 Ariz. 82, 800 P.2d 585 (1990).

■ "[S]tatutes of limitations are designed to encourage plaintiffs to pursue claims diligently and to prevent the assertion of stale and fraudulent claims." *Florez v. Sargeant,* 185 Ariz. 521, 526, 917 P.2d 250, 255 (1996). "[T]he discovery rule developed as a tool to mitigate the harshness of applying the statute to a plaintiff who could not have known any of the facts underlying the cause of action." *Doe v. Roe,* 187 Ariz. 605, 609, 931 P.2d. 1115, 1119 (App.1996). Our supreme court has noted, however, that "the important inquiry in applying the discovery rule is whether the plaintiff's injury or the conduct causing the injury is difficult for plaintiff to detect." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co.,* 182 Ariz. 586, 590, 898 P.2d 964, 968 (1995). There was no such showing here; on the contrary, plaintiffs were aware of all pertinent facts concerning their injury and causation by 1987.

Moreover, there is no evidence that plaintiffs did, or attempted to do, anything from 1987 to 1992 to investigate, explore or prosecute their claims. Nor did plaintiffs establish that, had they inquired and investigated their claims between 1987 and July 1991 (that is, more than two years before they filed suit), they would not have discovered the "facts" upon which their liability claims are based. When plaintiffs began investigating and obtaining more information in late 1992 and 1993, they acknowledge that "[i]t then became apparent to both of [them] that the blood companies might have been negligent," and therefore they contacted counsel in June 1993. Plaintiffs were required to exercise reasonable diligence to explore all relevant facts concerning A.'s and B.'s HIV, B.'s resulting AIDS and death, and their cause. *Doe v. Roe,* 187 Ariz. at 608–611, 931 P.2d at 1118–1121. Doing absolutely nothing for over five years to investigate a claim is not reasonable diligence under any definition of those words. Whatever "reasonable diligence" may or may not require under different circumstances, here it required more

than fortuitously learning of possible wrong-doing by known health care providers more than five years after plaintiffs had actual knowledge of all other pertinent facts.

Other courts, including the United States Supreme Court, have rejected claims similar to plaintiffs'. In *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the issue was whether a claim accrues under the Federal Tort Claims Act, 28 U.S.C. § 2401(b), "when the plaintiff knows both the existence and the cause of his injury or at a later time when he also knows that the acts inflicting the injury may constitute medical malpractice." *Kubrick,* 444 U.S. at 113, 100 S.Ct. at 355, 62 L.Ed.2d at 264. With reasoning we find persuasive, the Supreme Court adopted the former proposition:

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter.
>
> \*     \*     \*     \*     \*     \*
>
> We thus cannot hold that Congress intended that "accrual" of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community.... If advised that he has been wronged, he may promptly bring suit. If competently advised to the contrary, he may be dissuaded, as he should be, from pressing a baseless claim. Of course, he may be incompetently advised or the medical community may be divided on the cru-

cial issue of negligence, as the experts proved to be on the trial of this case. But however or even whether he is advised, the putative malpractice plaintiff must determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make.

*Id.,* at 122–125, 100 S.Ct. at 359–360, 62 L.Ed.2d at 269–270. *See also Schaefer v. Gulf Coast Regional Blood Ctr.,* 10 F.3d 327, 332 (5th Cir.1994) (plaintiff's cause of action accrued no later than the time plaintiff learned of his HIV-positive status); *Smith v. American Red Cross,* 876 F.Supp. 64, 68 (E.D.Pa.1994) ("[U]nder the discovery rule, the statute of limitations was tolled until ... the day [plaintiff] learned both that she was HIV positive and the cause of her illness."); *Doe v. Cutter Biological,* 844 F.Supp. 602, 608 (D.Idaho 1994) (positive HIV test is objective proof of injury and statute of limitations begins to run at that time); *Doe v. Cutter Biological,* 813 F.Supp. 1547, 1554 n. 3 (M.D.Fla.1993), *aff'd,* 66 F.3d 342 (11th Cir. 1995) (plaintiff suing because of HIV infection "need only be aware of exposure to the product so as to suggest causation"); *Mack v. A.H. Robins Co., Inc.,* 573 F.Supp. 149, 154 (D.Ariz.1983), *aff'd,* 759 F.2d 1482 (9th Cir. 1985) (knowledge "of the defendant's improper conduct or defect in the product is not required in Arizona," and "a cause of action accrues once the plaintiff knows of the injury and the causal connection between the defendant's product and that injury"); *Murray v. Hamot Medical Ctr.,* 429 Pa.Super. 625, 633 A.2d 196 (1993).

The foregoing principles are consistent with Arizona law and apply to bar plaintiffs' claims in this case. *See Doe v. Roe,* 187 Ariz. at 609–610, 931 P.2d at 1119–1120 ("[T]he discovery rule delays accrual of a cause of action only until the claimant knows, or by the exercise of reasonable diligence should know, that the defendant harmed [him or] her," and "it is not necessary for a claimant to know all the facts for the statute to begin to run; rather, all that is required is that he [or she] know enough facts as would prompt

**178**

a reasonable person to investigate and discover the full extent of the claim."); *Floyd v. Donahue,* 186 Ariz. 409, 412, 923 P.2d 875, 878 (App.1996), *quoting Mayer,* 14 Ariz.App. at 252, 482 P.2d at 501 ("The discovery rule delays accrual until the plaintiff has reason to know 'by the exercise of reasonable diligence' that defendant harmed her."). Because plaintiffs knew or by the exercise of reasonable diligence should have known of all pertinent facts (as opposed to their legal significance) more than two years before filing suit, the trial court properly granted summary judgment for defendants.

Plaintiffs' reliance on *Anson* and *Commercial Union Ins. Co. v. Lewis and Roca,* 183 Ariz. 250, 902 P.2d 1354 (App.1995) is misplaced. Those cases do not hold that a plaintiff must know or reasonably suspect that a putative defendant was negligent or at fault before plaintiff's cause of action accrues for limitations purposes. In *Anson,* which involved appeal from a dismissal under Ariz. R.Civ.P. 12(b)(6), 16 A.R.S., the court determined that Arizona's constitution requires the discovery rule to apply to wrongful death claims as well as other tort actions. The court recognized that a claim "is barred two years from when the plaintiff knew or should have known facts giving rise to the claim." *Anson,* 155 Ariz. at 424, 747 P.2d at 585. The plaintiffs in *Anson* alleged "they had no knowledge of important facts related to the cause of death of their son, and were not sufficiently aware of the causal relationship between the defects in the jeep and their son's death to file a claim." *Id.* at 427, 747 P.2d at 589. Here, in contrast, plaintiffs admittedly knew in 1987 of the causal link between factor concentrates and HIV, and knew by no later than 1989 of the causal link with AIDS. Finally, the court in *Anson* reversed primarily because of factual issues concerning the defendant's alleged fraudulent concealment which, as noted below, are lacking in this case.

*Commercial Union* was a legal malpractice case in which the "controlling issue" was "when [the plaintiff] became aware or should have become aware of the cause of its harm." *Commercial Union,* 183 Ariz. at 256, 902 P.2d at 1360. The court focused on the point at which the plaintiff's injury was sufficiently definite and ascertainable for the limitations period to commence. Again, plaintiffs in this case knew when A. and B. were diagnosed HIV positive in 1987 that the factor concentrates had caused them appreciable harm.

■ We summarily dispose of plaintiffs' remaining contentions. Plaintiffs presented no genuine issues of material fact as to whether the fractionator defendants, let alone the other defendants, "wrongfully concealed facts giving rise to the cause of action in such a manner as to prevent [plaintiffs] from reasonably discovering a claim exists within the limitations period." *Anson,* 155 Ariz. at 426, 747 P.2d at 587. Thus, their fraudulent concealment claim did not preclude summary judgment. *See Cooney,* 160 Ariz. at 141, 770 P.2d at 1187 (alleged fraudulent concealment did not toll the statute of limitations when plaintiff demonstrated no "positive act by the defendant taken for the purpose of preventing detection of the cause of action"). Finally, we cannot say the trial court abused its discretion in denying plaintiffs' request for additional time for discovery under Ariz.R.Civ.P. 56(f), 16 A.R.S., given the deficiencies and lack of specificity in plaintiffs' affidavit and the active litigation of the case for over two years before defendants moved for summary judgment.

Affirmed.

DRUKE, C.J., and JAMES E. DON,* Judge, concur.

---

* A judge of the Pinal County Superior Court authorized and assigned to sit as a judge on the