949 P.2d 511

**Mary Ella NOLDE, Mya Johnson, and Kathleen Andersen, Plaintiffs–Appellants,**

v.

**Bruce FRANKIE; Glendale Union High School District, Defendants–Appellees.**

No. 1 CA–CV 95–0475.

Court of Appeals of Arizona, Division 1, Department C.

May 1, 1997.

Review Granted Jan. 21, 1998.*

Treon, Strick, Lucia & Aguirre by Richard T. Treon and Michael T. DePaoli, Phoenix, for Plaintiffs–Appellants.

Jones, Skelton & Hochuli by A. Melvin McDonald and Eileen J. Dennis, Phoenix, for Defendant–Appellee Frankie.

Garrey & Curran by D. Reid Garrey and Shawna M. Woner, Scottsdale, and Teilborg, Sanders & Parks by Bradley R. Jardine, Rick N. Bryson and Kristin A. Herkes, Phoenix, for Defendant–Appellee Glendale Union High School District.

**OPINION**

KLEINSCHMIDT, Judge.

The facts, taken as they favor the Plaintiffs, are these. The Defendant, Bruce

---

* Moeller, J., did not participate in the determination of this matter.

Frankie, was a teacher and track coach at Washington High School. Each of the Plaintiffs was a student at Washington High School during the 1970s or 1980s. The Defendant seduced each of the Plaintiffs and engaged in extensive sexual activity with each over a long period of time. Most of this activity occurred while the Plaintiffs were minors.

The Defendant completely dominated the Plaintiffs psychologically. By means of this domination, together with threats to harm the Plaintiffs and those close to them, the Defendant persuaded or intimidated the Plaintiffs into keeping silent about his activities.

In the years following the cessation of their relationship with the Defendant, each Plaintiff experienced emotional problems, due in large part to their relationship with the Defendant. Each sought counseling of one kind or another. A clinical psychologist and a psychiatrist who are familiar with the Plaintiffs have expressed the opinion that fear of the Defendant, psychological blocking, internalized shame, guilt, self-blame, confusion, denial, repression and disassociation from the abuse have worked together to create an inability on the part of each Plaintiff to understand, on a conscious level, the connection between the Defendant's abuse and the mental and emotional damage they have suffered. These factors have made it impossible for the Plaintiffs to take any practical action to redress their grievances.

As the result of counseling for their problems, each of the Plaintiffs came to realize the wrongfulness of what the Defendant had done and how it was responsible for their problems. As a result, they were gradually able to free themselves from the Defendant's domination. Two of the Plaintiffs filed suit against the Defendant and the School District in 1993, and the third Plaintiff joined in the action in 1994. The Defendants filed motions for summary judgment based on the two-year statute of limitations, and these were granted. The Plaintiffs appealed.

The Plaintiffs acknowledge that they brought suit many years after the occurrence of the events which give rise to their claims. They argue, however, that the statute of limitations did not begin to run until they discovered the causal connection between their injuries and the Defendant's conduct. Based upon the professional literature that we discussed in *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 871 P.2d 698 (App.1993), the Plaintiffs also argue that we should adopt a special tolling rule for cases involving the abuse of a child by an adult in a position of trust.

After the Plaintiffs filed this appeal, our supreme court decided the consolidated appeal in *Florez v. Sargeant*, 185 Ariz. 521, 917 P.2d 250 (1996). In that case, the plaintiff, Gomez, had been molested when he was about twelve years old by a priest. He subsequently led a chaotic life and, when he was thirty, sued the priest and the diocese that had employed the priest. In response to the invocation of the statute of limitations defense, Gomez asserted that the statute was tolled because he was of unsound mind within the meaning of A.R.S. section 12–502, that he had been under duress, that his memory had been repressed, and that he did not connect the sexual abuse to his injuries until within two years of filing the action.

The other plaintiff in the consolidated appeal in *Florez*, Melissa Moonshadow, had been sexually abused by her father from the age of six until she was seventeen. She suffered from posttraumatic stress disorder which prevented her from confronting her father. She also alleged that her father threatened her with injury or death if she told of the abuse. Some four years after the last incident of abuse, Moonshadow brought suit.

The supreme court concluded that in each case, the statute of limitations barred the action. The court rejected every argument concerning psychological pressure, repressed memory, posttraumatic stress disorder, duress, fraud and equity that the Plaintiffs in the case now before us have raised. The supreme court held that the touchstone of whether an unsound mind will toll the statute is whether the plaintiff is able to manage his or her ordinary daily affairs, something that all of the Plaintiffs in the case before us have

indisputably been able to do. *Florez* governs this case, and we are required to follow it.

The Plaintiffs also allege that the court erred in refusing to allow them to complete discovery before granting the summary judgment on the basis of the statute of limitations. In light of the all encompassing nature of *Florez* with respect to the issues, we cannot find an abuse of discretion in the trial court's ruling.

The Defendants have requested attorney's fees under the provisions allowing for such when an appeal is frivolous. The appeal was not frivolous when filed, and is not frivolous now. The request for fees is denied.

The order of the trial court granting the Defendants' motions for summary judgment is affirmed.

THOMPSON, P.J., concurs.

GRANT, Judge, specially concurring.

These types of cases present a conundrum for the judiciary throughout the country. These cases have arisen only in recent years and were not previously contemplated by courts or by legislatures. *Ulibarri v. Gerstenberger, M.D.*, 178 Ariz. 151, 154, 871 P.2d 698, 703 (1993). Although we now know that this type of societal problem has existed for a very long time, only recently have victims sought civil damages in court. *See* Stephanie Orr, *Facing Up to Abuse*, The Arizona Republic, March 30, 1997, at H1.

The conundrum facing the courts is this: If we affirm summary judgments granted in favor of defendants on the basis of the statute of limitations, even in the face of continuing abuse, we are disenfranchising a whole set of plaintiffs from seeking redress in the courts for a major wrong committed against them, which causes life-long damages and consequences. On the other hand, if we reverse summary judgments granted on the basis of statutes of limitations, we force possibly innocent defendants to defend against stale claims. Neither solution is compatible to the truth-seeking purpose of litigation.

I specially concur in the present case because the majority does not discuss the major societal implications of its decision or what courts are doing in this area. However, this court is bound by the supreme court's opinions in *Florez v. Sargeant,* 185 Ariz. 521, 917 P.2d 250 (1996). Therefore we are not free to reach a result other than that dictated by *Florez* and reached in the majority opinion here.

However, in the hope that either the supreme court or the legislature will give more consideration to these cases than to normal tort cases filed after the statute of limitations has run, I write separately. Taking the facts as they favor the plaintiffs, the three female plaintiffs in this case have had their lives permanently disrupted and scarred by the alleged actions of their trusted public high school track coach. We must take the facts as they favor the plaintiffs, against whom summary judgment was granted. *Thompson v. Better–Bilt Aluminum Prod. Co.*, 171 Ariz. 550, 558, 832 P.2d 203, 211 (1992); *Hill–Shafer Partnership v. Chilson Family Trust*, 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990). We will review independently any questions of law relating to the statute of limitations defense. *Owens v. City of Phoenix*, 180 Ariz. 402, 405, 884 P.2d 1100, 1103 (App.1994). In addition, we must determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *Gonzalez v. Satrustegui*, 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App. 1993). Summary judgment is proper when evidence presented by the party opposing the motion has so little probative value, given the required burden of proof, that reasonable jurors could not agree with the opposing party's conclusions. *Orme Sch. v. Reeves*, 166 Ariz. 301, 802 P.2d 1000 (1990). Finally, this court will not disturb a trial court's denial of Rule 56(f) relief absent the trial court's abuse of discretion. *Lewis v. Oliver*, 178 Ariz. 330, 873 P.2d 668 (App.1993), *cert. denied*, 513 U.S. 929, 115 S.Ct. 319, 130 L.Ed.2d 280 (1994).

According to the three plaintiffs, Defendant ("Coach Frankie"), began engaging in extensive sexual activity with them when they were minors, using his position of trust and authority as their coach. He picked his victims carefully—each came from a broken home and had no father figure—a role that

Coach Frankie initially assumed with the girls. During the time of the sexual activity, Coach Frankie completely dominated the plaintiffs psychologically and threatened to harm them and those close to them—threats he sometimes actually carried out. He intimidated the plaintiffs into keeping silent about his activities. Following the cessation of the sexual activity, Coach Frankie still continued his psychological domination over the plaintiffs. Significantly, in the trial court, Coach Frankie never disputed the facts, but instead relied solely upon the statute of limitations as a shield, barring all of the plaintiffs' claims.

All of the plaintiffs claimed both physical and psychological damage well into adulthood as a result of Coach Frankie's abuse. One of the plaintiffs, Nolde, went to the police and made a statement in March 1992. During the fall of 1992, because she had not obtained a satisfactory response from the police, Nolde went to the principal of Moon Valley High School, who had previously been the principal at Washington High School where Coach Frankie worked when the alleged sexual abuse occurred. Nolde told the principal what Coach Frankie had done to her. The principal advised Nolde to speak to the assistant superintendent of Glendale Union High School District, which she did. Shortly thereafter, Nolde was attacked twice by men she believes had been sent by Coach Frankie to silence her. Terrified, she temporarily moved out of the United States. After she returned to the United States, she saw Coach Frankie in a restaurant and he verbally threatened her.

Finally, the three plaintiffs filed complaints alleging negligence and intentional acts arising from the sexual molestation by Coach Frankie during the time they were minors. In addition, the plaintiffs alleged that Glendale Union High School District negligently supervised and negligently retained Coach Frankie, and also negligently entrusted students such as plaintiffs to Coach Frankie, thereby jeopardizing the students' safety.

After the complaints were filed, plaintiffs filed a Petition for Order to Show Cause for a Temporary Restraining Order to prevent Coach Frankie from harassing, intimidating and physically assaulting each of them and their potential witnesses. The trial court denied both the restraining order and the injunction.

Defendants Coach Frankie and Glendale Union High School District filed separate motions for summary judgment. Because no formal discovery had been conducted, plaintiffs filed a Request for Rule 56(f) Continuance and Affidavit of Counsel, requesting a 90–day continuance. Ariz.R.Civ.P. 56(f). The trial court entered summary judgment for the defendants, holding that the court could find no genuine issue of material fact and "no basis under Arizona law as it is currently constituted to provide for an equitable tolling of the statute of limitations."

The law in Arizona for personal injury actions, which includes actions for sexual abuse and child molestation, states that an action must be commenced and prosecuted "within two years after the cause of action accrues, and not afterward." A.R.S. § 12–542 (1985). Due to plaintiffs' minority status at the time of most of the alleged torts, the two-year limitations period would normally begin to run on their eighteenth birthdays. A.R.S. § 12–502(A) (1984).[1] All three plaintiffs waited more than two years past their eighteenth birthdays to file these actions.

Plaintiffs' delay in filing is not unusual when examining the typical victim of sexual abuse. While it has only been in the past five to ten years that this very distinct group of claimants has come to the forefront in tort litigation, most of these victims wait to come to court as adult survivors of abuse, long after the acts of abuse occurring in their childhood have ended. See *Tolling the Statute of Limitations in Actions Brought by Adult Survivors of Childhood Sexual Abuse,* 33 Ariz.L.Rev. 427 (1991). The delay is due, at least in part, to the lack of understanding surrounding abuse and the remaining veil of secrecy that shrouds victims and their suffering.

---

**1.** A.R.S. section 12–502 was amended in 1996, but the former statute controls the claims in issue.

Historically, children's reports of sexual abuse were dismissed as fantasy or the fault of a "seductive child," while young girls who complained of incest would be repudiated under the Freudian theory of feminine fantasy. *Id.* at 428. It was not until the 1960's and 1970's, when civil rights leaders, feminists, and child advocates came to be heard and began to have political power, that awareness of child abuse as a widespread social phenomenon began to emerge. *Id.* at 428–29.

Many studies have shown that victims of childhood sexual abuse suffer from both short and long-term effects. *See generally,* Orr, *supra,* at H1–2; Preston McMurry, *Scars of Abuse Radiate Far Beyond the Victim,* The Arizona Republic, Sunday, March 30, 1997, at H1. More than 2.9 million children are the victims of abuse and neglect each year. Orr, *supra,* at H2. One in four girls and one in six boys are sexually abused. *Id.* Of these cases, 80 percent of the time the child knows the abuser. *Id.* (citing child-abuse statistics from *Rape in America: A Report to the Nation,* special reports of the Bureau of Justice Statistics, *Child Abuse & Neglect,* the U.S. Department of Justice, National Institute of Justice and *Second Steps: Grades 1–3* ).

> The victims of these crimes suffer life-long damage of shame, humiliation, low self-esteem and addiction. The abusers practice a subtle form of warfare. It is a deadly psychological warfare in which 33 percent specifically tell the child not to tell; 42 percent portray sexual abuse as education or as a game; 24 percent use anger and/or a threat of physical force, and 20 percent threaten loss of love or say to the child that he/she is to blame.

*Id.*

The perpetrator of the abuse often occupies a position of authority, such as a father or teacher, as in this case, and uses the relationship to keep the victim silent. Thus, because of the vulnerability of the victim, and the often close relationship to the abuser, most sexual abuse cases continue to be unreported. Even when abuse is reported, victims often receive inadequate protection and treatment. *See* 33 Ariz.L.Rev., *supra,* at 429. Moreover, as in this case, many authorities will often refuse to prosecute, especially when the victims wait several years to report the abuse, because of the high criminal threshold of proof in which the state must prove the crime beyond a reasonable doubt. Here, for example, the evidence in the trial court suggested that while Nolde and Johnson both appeared to have reported the abuse to authorities in early 1992 within the seven-year criminal statute of limitations (*see* A.R.S. section 13–107(B)(1) (1985)), the authorities refused to prosecute because they were not assured that they could prove the cases "beyond a reasonable doubt." Thus, criminal prosecution is often difficult because, in most cases, it is the victim's word against that of the abuser, or to put it another way, a child's word against that of an adult.

Because criminal sanctions are often out of reach for many abuse victims, and because of the unique nature of their claims, victims of sexual abuse have begun to seek reliance on the civil justice system. However, courts have been very slow to accept these claims. Even so, many jurisdictions, recognizing that a rigid statute of limitations only serves to bar a whole class of individuals from redress, have adopted certain theories that serve to toll the statute of limitations and allow childhood victims of sexual abuse to seek vindication from the civil court system.

Arizona, like other jurisdictions, has recognized three distinct theories which serve to toll the statute of limitations for victims of childhood abuse. However, Arizona, unlike other jurisdictions, has established such high hurdles in order to obtain any sort of tolling that only a limited group of claimants has been able to bring cases of sexual abuse to court and survive motions for summary judgment. *See, e.g., Florez.* Thus, most claimants, such as the plaintiffs in this case, are still effectively barred from attaining any sort of satisfactory redress in a court of law.

In order to elaborate why I believe Arizona is heading down an unwise judicial path by denying access to the courts for a whole class of plaintiffs, as illustrated by the law established in *Florez,* I will examine the three exceptions that have been used to toll

the statute of limitations in sexual abuse cases, and analyze why these exceptions do not enable the plaintiffs in this case to obtain any form of satisfactory judicial resolution of their claims.

## 1. Unsound Mind

One of the ways that a plaintiff in either a sexual abuse or other civil claim can toll the statute of limitations is to prove he or she was of "unsound mind," and was therefore unable to bring his or her claim within the relevant limitations period. In particular, A.R.S. section 12–502(A) states that the statute of limitations will be tolled not only for a person under the age of eighteen, but also for those of "unsound mind." The statute of limitations is tolled until "after the removal of the disability," at which time such a person "shall have the same time" to bring the action which is allowed to others. A.R.S. § 12–502.

This court, in the seminal case of *Allen v. Powell's Int'l, Inc.*, defined "unsound mind" to be "such [that] a person is unable to manage his affairs or to understand his legal rights or liabilities." 21 Ariz.App. 269, 270, 518 P.2d 588, 589 (1974) (citation omitted). Our supreme court in *Florez* interpreted "unsound mind" to have a much narrower definition, essentially overlooking the second part of the definition in *Allen* concerning the ability to understand one's legal rights. *See Florez*, 185 Ariz. at 526, 917 P.2d at 255. The *Florez* court found, "[t]he focus of the unsound mind inquiry is on a plaintiff's ability to manage his or her ordinary daily affairs. It does not focus on plaintiff's ability to pursue the subject matter of the litigation at issue." 185 Ariz. at 525, 917 P.2d at 254. The court found that the affidavits from the experts presented in the two cases had "confuse[d] the inability to bring an action with the inability to perform the basic functions of human existence. An inability to bring a lawsuit is no evidence of an unsound mind." *Id.* at 527, 917 P.2d at 256. The *Florez* court found that neither plaintiff in the two consolidated cases was "insane" or "incompetent," and that, though they were both diagnosed with post-traumatic stress disorder, this fact was not enough to constitute "unsound mind." *Id.* at 526, 917 P.2d at 255.

The problem with the "unsound mind" analysis, at least as it is presented in *Florez*, is that the plaintiffs have to present themselves as completely "incompetent" or "insane" before the statute is tolled. This, in many ways, re-traumatizes the victim—she is forced to come forward and publicly present herself as mentally deranged before she can survive a motion for summary judgment. This requirement opens a whole host of other legal problems, for if the victim is "insane," can she legally file a lawsuit or must she first have a guardian ad litem appointed to file ·suit for her? *See Ruvalcaba by and through Stubblefield v. Ruvalcaba*, 174 Ariz. 436, 850 P.2d 674 (App.1993) (A guardian can petition for dissolution of marriage on behalf of an incompetent adult ward.). Furthermore, this "insane" plaintiff must be able to convince a guardian or next friend that the sexual abuse took place. The very hurdle to filing the lawsuit will hurt the victim's credibility when the jury must decide the case by weighing the victim's testimony against that of the abuser, whose sanity is not usually called into question. Indeed, the court may find the plaintiff to be incompetent to testify at all. *State v. Peeler*, 126 Ariz. 254, 614 P.2d 335 (App.1980) (A witness is incompetent to testify if she is unable to perceive the event in question and relate it to the court.); *see also* Rule 601 of the Arizona Rules of Evidence; *see* A.R.S. § 12–2202(1) (Persons who are of unsound mind at the time they are called to testify shall not be witnesses in a civil action.); *see also* A.R.S. § 13–406 (The competency of witness in a criminal trial is left to the sound discretion of the trial court.).

In addition, by only allowing plaintiffs who remain so "incompetent" or "insane" to bring cases that survive summary judgment on statute of limitations grounds, the courts are in essence penalizing those victims who have, on the one hand, been able to at least nominally obtain some stability in a small part of their lives, such as school or employment, but who are still unable to deal with the emotional aspect of their lives. Most survivors of sexual abuse tend to bifurcate their emotional selves from the rest of their lives. *See*

*generally*, Gregory G. Sarno, Annotation, *Emotional Psychological "Blocking" or Repression as Tolling the Statute of Limitations*, 11 A.L.R. 5th 588 (1993). It is unsound public policy to extend access to the court system only to those few plaintiffs who remain so emotionally unstable as to be labeled "incompetent" or "insane," while penalizing those who have managed to function in some basic aspects of life, but who are still unable to understand or pursue their legal rights.

Moreover, the focus for tolling the statute of limitations under the "unsound mind" theory should not be only on the plaintiff—especially if the plaintiff presents evidence that the abuser's duress or threats of death caused the plaintiff to wait to file a claim beyond the statute of limitations. Rather, the focus should also be on whether any acts of the defendant who caused the plaintiff to suffer from an "unsound mind," caused the plaintiff's delay in filing the claim.

As the appellate court in New Jersey astutely noted, a victim, "often even long after the cycle of abuse itself has been broken ... will repress and deny, even to himself or herself, what has happened." *Jones v. Jones*, 242 N.J.Super. 195, 576 A.2d 316, 321 (1990). While the New Jersey court was sensitive to balancing the defendant's rights in litigating against stale claims, with the plaintiff's rights in waiting because the duress "exerted by defendants was so compelling," the court recognized that the "[u]nswerving, mechanistic application of statutes of limitations would at times inflict obvious and unnecessary harm upon individual plaintiffs without materially advancing the objectives they are designed to serve." *Id.* 576 A.2d at 319–20 (citation omitted). The court correctly reasoned that the better law, when considering whether a plaintiff was "insane" or of "unsound mind," is not to construe the "statutory language ... [so] narrowly as to encompass only those forms of mental illness that require institutionalization," but "to relieve from the strict time restrictions any person who actually lacks the ability and capacity, due to mental affliction, to pursue his lawful rights." *Id.* at 321.

Indeed, this language conforms to our court's language in the original interpretation of unsound mind in *Allen*. In this case, the experts' affidavits state that all of the plaintiffs either suffered, or most likely suffered, from post-traumatic stress disorder, and thus were unable to understand and exercise their legal rights. However, under *Florez*, these plaintiffs would not qualify as suffering from unsound mind, despite the experts' affidavits. As noted, post-traumatic stress disorder is not enough to constitute unsound mind. *See Florez*, 185 Ariz. at 525–26, 917 P.2d at 254–55.

## 2. Equitable Estoppel

Plaintiffs ask this court to forge new law to recognize the tolling of the statute of limitations under A.R.S. section 12–502 based on equity. Specifically, plaintiffs urge that when four concrete factors are present, the statute of limitations should always be equitably tolled for survivors of sexual abuse. These factors are based on some of the principles underlying our holding in *Ulibarri*. The four factors advocated by plaintiffs are: (1) a claim of sexual abuse of a minor by an adult; (2) the adult is in a relationship of trust and confidence with the minor (for example a teacher, doctor, or parent), and the adult has used this relationship to help accomplish the tort; (3) corroboration of the sexual abuse apart from the victim's testimony; and (4) expert testimony establishing that the tort caused some mental or emotional impairment that persisted past the victim's majority and caused the victim not to file her claim against the defendant within the statute of limitations.

In particular, plaintiffs state:

Equity demands that the abuser should not be able to use the statute of limitations as a shield to protect him from his victim's inability to deal with the situation because of the fear created by the abuser which paralyzes the will of the abused person to act.

... [I]t would be an abomination if this Court would, under all the facts and circumstances of this case, hold that as a matter of law Bruce Frankie should be insulated from liability for his predatory

conduct on children because they were not able to free themselves from their fear within two years after they reached their eighteenth birthday.

In *Florez*, the supreme court noted that *Ulibarri* was a narrow holding which was specific to the facts involved in that case. *Florez*, 185 Ariz. at 528, 917 P.2d at 257. The supreme court characterized *Ulibarri* as "an unprecedented amalgamation of a variety of legal theories ... including equity, the 'delayed discovery rule,' and concealment." *Id.*

I disagree with the law as analyzed in *Florez*, that rigidly applies the statute of limitations and fails to take into account the unique psychological impediments that can cause a sexual abuse victim to fail to assert legal rights or claims, or even to realize that such rights exist.

Moreover, in addition to the terrible trauma and emotional harm suffered by most victims of sexual abuse, many plaintiffs of this sort are either deluded into thinking that the abuse is "normal" or is "their fault," or, as with the plaintiff Moonshadow in *Florez*, they are threatened with injury or death if they tell anyone else about the acts of abuse. *Hammer v. Hammer*, 142 Wis.2d 257, 418 N.W.2d 23, 25 (App.1987); *see* 33 Ariz. L.Rev., *supra*, at 429; *see also* Orr, *supra*, at H2. When the defendant has caused the plaintiff to refrain from filing within the time frame set out within the applicable statute of limitations, whether by misleading the plaintiff about the nature of the conduct, threatening the plaintiff with injury, or deliberately repressing the plaintiff's memory through hypnosis as in *Ulibarri*, equity demands that the statute be tolled until the plaintiff can overcome the impediments that the defendant deliberately set up to prevent the plaintiff from timely filing. *See, e.g., Hildebrand v. Hildebrand*, 736 F.Supp. 1512, 1523–24 (1990) (The court tolled the statute when the abuser who was the father of the victim was also a doctor and deluded the victim into believing her emotional problems were part of a "chemical imbalance," rather than a result of his abuse.); *Ulibarri*, 178 Ariz. at 162, 871 P.2d at 709.

The supreme court has recognized that the "[e]quitable tolling doctrine is rooted in a number of common-law exceptions to statute of limitations, including ... defendant's fraudulent concealment of cause of actions ... defendant's inducement of plaintiff not to sue ... [and] disability of the suing party...." *Hosogai v. Kadota*, 145 Ariz. 227, 231, 700 P.2d 1327, 1331 (1985). However, the supreme court refused to apply this doctrine in *Florez*.

In the case at hand, plaintiffs allege that their case is distinguishable from *Florez* because of Coach Frankie's threats to all three plaintiffs and his coercing them to never tell anyone about the sexual abuse and to take their secret "to the grave." A review of this record reveals many instances of coercion and threats from Coach Frankie that resulted in all three plaintiffs not timely pursuing their claims. For instance, during the course of a lawsuit brought by Johnson's mother, the record suggests that Coach Frankie induced Johnson to write letters to her mother and to the principal of Washington High School contending that Johnson was not sexually involved with Coach Frankie. These letters were admitted into evidence, and may be considered indicative of active concealment by Coach Frankie.

In addition, Coach Frankie deluded all three plaintiffs into believing that the sexual relationship he had with them while they were minors was "normal," was done out of his love for them, and that each plaintiff was "special" to him. These statements arguably constitute concealment in that Coach Frankie misled plaintiffs to believe that what was happening to them was not sexual abuse, therefore plaintiffs did not file claims until well after expiration of the statutory period. Finally, Coach Frankie overtly threatened Nolde by telling her that people close to her would be harmed if she "did not get with the program" in having sex with him, and that she could be harmed if she decided to tell anyone about their relationship. Certainly these threats are not as horribly extreme as those against Moonshadow in *Florez*. Clearly, since the supreme court declined to apply equitable estoppel in that case, this court is certainly constrained from applying it here.

Moreover, this court has stated that before any sort of estoppel or equitable tolling can apply, the plaintiff must "show some positive act" on the part of the defendant that "induced" the plaintiff to forbear from filing suit or concealed the cause of action, and in addition, any threats made by the defendant must be very "specific." *See Doe v. Roe,* 187 Ariz. 605, 931 P.2d 1115 (App.1996) review pending; *Floyd v. Donahue,* 186 Ariz. 409, 923 P.2d 875 (App.1996) (A father using his parental authority and threats against his daughter was not enough to toll the statute of limitations on the basis of equity.). *But see Logerquist v. Danforth,* 188 Ariz. 16, 21–22, 932 P.2d 281, 286–87 (1996).

While I find that there were overt threats in this record, the court is constrained by the dictates of *Florez,* therefore equitable estoppel is not available.

### 3. Delayed Discovery Rule

The final theory in Arizona which has been used to toll the statute of limitations is the "delayed discovery rule," or simply, the "discovery rule." Under the discovery rule, a cause of action accrues, "when the plaintiff knew or by the exercise of reasonable diligence should have known of the defendants' conduct and therefore the statute of limitations does not begin to run until that time." *Mayer v. Good Samaritan Hosp.,* 14 Ariz. App. 248, 252, 482 P.2d 497, 501 (1971); *Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961, 968 (1984); *Lucchesi v. Stimmell,* 149 Ariz. 76, 716 P.2d 1013 (1986). In other words, "the claim is barred two years from when the plaintiff knew or should have known facts giving rise to the claims." *Anson v. American Motors Corp.,* 155 Ariz. 420, 424, 747 P.2d 581, 585 (App.1987).

Arizona courts have applied the discovery rule to claims of malpractice, *see Kenyon,* products liability, *see Anson,* and breach of contract, *see Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Amer.,* 182 Ariz. 586, 898 P.2d 964 (1995). In *Ulibarri,* this court applied the discovery rule to allow a plaintiff to bring a claim in 1990 for sexual abuse which occurred in 1983 and 1984. 178 Ariz. at 158, 871 P.2d at 705. We applied the discovery rule in that case because the plain-tiff could not have discovered the wrongful acts until 1990 due to post-hypnotic suggestions. *Id.*

This court also recently held "that the discovery rule applies to cases of repressed memory alleged to arise from childhood sexual abuse." *Doe,* 187 Ariz. at 609, 931 P.2d at 1119. The plaintiff in *Doe* claimed that her father had sexually abused her as a child and "she developed psychological coping mechanisms which caused her to completely repress the memory of this abuse." *Id.* at 607, 931 P.2d at 1117. In *Doe,* the plaintiff's first recollection was a "flashback" in July 1989, more than twenty years later, triggered by a television program discussing childhood incest. *Id.* Although the plaintiff immediately sought psychological counseling, she did not file suit until May 1992. Under those facts, and based on the reasoning established in *Florez,* the court in *Doe* held that the plaintiff's claim was time-barred because she did not file suit within two years of discovering the facts underlying her claim. *Id.* at 610, 931 P.2d at 1120. In *Logerquist,* the court reasoned that issues involving credibility and memory were classic factual disputes and were therefore inappropriately decided on summary judgment. 188 Ariz. at 23, 932 P.2d at 288.

Plaintiffs in this case, though not actually using the term "discovery rule," argue that the statute of limitations should not accrue until they discovered the causal connection between their injuries and the defendant's tortious acts. Plaintiffs assert that they did not know about their injuries, or at least that their injuries were connected to the prior sexual abuse, until they received counseling.

Upon review of the record, Johnson's testimony was that the earliest she connected her injuries to the abuse or even began to suspect what had happened to her was actually abuse was when her business partner persuaded her in November 1991 that her sexual relationship with Coach Frankie was not normal and constituted sexual abuse. By March 1992, Johnson was receiving counseling. Thus, at a minimum, under the discovery rules, the statute should not have begun to run until November 1991 at the earliest, within two years of the complaint being filed.

Nolde first confided to a minister about her sexual relationship with Coach Frankie in early 1992, and he suggested that she start receiving counseling. Johnson called Nolde on March 27, 1992, and each victim went to the police individually. It was arguably not until this date that Nolde connected any psychological injuries to the earlier sexual abuse by Coach Frankie. Nolde began to go to counseling on March 3, 1992. This confession and counseling occurred within two years of Nolde's complaint being filed.

Finally, Andersen did not begin therapy until December 1993 to "figure out what was wrong in her life" and "what had happened to [her] with Coach." Andersen argues that it was not until this therapy began that she was able to connect any injuries to Coach Frankie's earlier sexual abuse of her. This therapy began within two years of her complaint.

Usually adult victims of childhood sexual abuse wait to bring their claims to court long after the statute of limitations has expired as to the dates of the abuse itself. These victims are unable to face their abuser often because the abuser, exerting authority or control over the victims, was able to convince the victims that what had happened to them was either the victims' fault, or was not abuse and was natural and normal. In this case, Coach Frankie told each victim that he "loved" her, she was "special" and that what happened between them was within the normal range of interactions between a male and a female who have affection for one another. Thus, under the plaintiffs' theory, the statute should be tolled under the discovery rule until the plaintiffs could have reasonably comprehended that they had been abused, and that their injuries were connected to this abuse.

Many jurisdictions recognize this form of "delayed discovery rule," that recognizes that the statute of limitations should not even begin to accrue until the victim discovers the wrongfulness of the acts alleged. *See, e.g., Blackowiak v. Kemp,* 546 N.W.2d 1 (Minn. 1996) (holding objective, reasonable person standard applies to delayed discovery rule with regard to claims for sexual abuse); *D.P. v. M.J.O. and J.M.O.,* 266 Ill.App.3d 1029, 203 Ill.Dec. 950, 640 N.E.2d 1323 (1994) (holding discovery rule requires both knowledge of an injury and of its wrongful cause before statute of limitations begins to run); *Byrne v. Bercker,* 176 Wis.2d 1037, 501 N.W.2d 402, 406 (1993) (holding cause of action accrued when victim became aware that she had been subjected to incestuous assaults and that such assaults were the cause of the psychological symptoms); *Evans v. Eckelman,* 216 Cal.App.3d 1609, 265 Cal. Rptr. 605 (1990) (holding awareness of wrongfulness of defendant's actions is prerequisite to accrual of action under delayed discovery rule); *Osland v. Osland,* 442 N.W.2d 907, 908 (N.D.1989) (holding discovery rule extended period in which victim could bring action since severe emotional trauma caused by sexual abuse resulted in victim being unable to fully understand or discover her cause of action during applicable statute of limitations).

In Arizona, the statute of limitations defense has generally not been favored. *Gust, Rosenfeld,* 182 Ariz. at 590, 898 P.2d at 968. The discovery rule has been "developed as a tool to mitigate the harshness of applying the statute to a plaintiff who could not have known any of the facts underlying the cause of action." *Doe,* 187 Ariz. at 609, 931 P.2d at 1119 (citing *Gust, Rosenfeld,* 182 Ariz. at 588, 898 P.2d at 966). Moreover, in this state, determination of a claim's accrual date usually is a question of fact, with the inquiry centering on the plaintiff's knowledge of the subject event and resultant injuries, whom the plaintiff believed was responsible, and plaintiff's diligence in pursuing the claim. *Anson,* 155 Ariz. at 425, 747 P.2d at 586.

Nevertheless, despite the fact that other jurisdictions have recognized that the cause of action should accrue from the time the victim was able to understand and recognize her injury, and despite the enlightened Arizona practice of applying the discovery rule in medical malpractice and other areas, the supreme court has refused to extend the discovery rule to sexual abuse cases that do not involve repressed memories. In *Florez,* the court concluded that because plaintiffs knew both the identity and conduct of their tortfeasors, no delayed discovery consider-

ations (or equitable estoppel arguments) applied. 185 Ariz. at 528, 917 P.2d at 257. The *Florez* court found that the plaintiffs "knew or should have known of the events giving rise to their claims long before the statute expired." *Id.*

The *Florez* court did not analyze whether the plaintiffs were actually able to discover their injuries. Instead, the court only concluded that plaintiffs "should have" connected the injuries with the abuse, thereby foreclosing any cause of action. *Id.* This holding contradicts *Kenyon* in which the same court held that an absolute bar under a three-year statute of limitations was unconstitutional when the victim did not discover that the injury existed until after the statute of limitations had run. *See Kenyon,* 142 Ariz. at 87, 688 P.2d at 979. The *Florez* court also ignores the fact that these types of plaintiffs are unique, and that they are often not able to discover their injuries due to trauma until well after the applicable statute of limitations.

Although I appreciate the supreme court's concern about the staleness of old claims, this concern should not preclude an entire class of plaintiffs from bringing their claims to court. In fact, "to place the passage of time in a position of priority and importance over the plight of CSA [child sexual assault] victims would seem to be the ultimate exaltation of form over substance, convenience over principle." *Petersen v. Bruen,* 106 Nev. 271, 792 P.2d 18, 24 (1990). I do not think the legislature had such a result in mind when it first enacted A.R.S. section 12–502. This section was enacted in 1901, long before child abuse was ever in the public consciousness. Moreover, Arizona's Constitution states, "the right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." Ariz. Const. art. XVIII, section 6. Though the legislature can regulate causes of action in tort, it cannot abrogate any such action. A cause of action protected by Article eighteen, Section six of the Arizona Constitution is a "fundamental right" in Arizona. *Kenyon,* 142 Ariz. at 79–83, 688 P.2d at 971–75.

I believe that *Florez* is abrogating a whole class of plaintiffs from ever obtaining vindication in court for their claims by rigidly applying A.R.S. section 12–502 to sexual abuse cases. Nevertheless, this court is bound by that decision; were we not, I would reverse the summary judgments and remand for trial.