**JANE DOE ONE, a single woman, Plaintiff,**

v.

**Philip J. GARCIA, individually and in his official capacity as Vice–Principal and Athletic Director of Douglas High School; Jesus Greer, individually and in his official capacity as Superintendent of Douglas Unified School District # 27; Mike Foster, individually and in his official capacity as Principal of Douglas High school and Douglas Unified School District No. 27, Defendants.**

No. 97–CV–328–TUC–ACM.

United States District Court, D. Arizona.

May 6, 1998.

768

Edward D. Fitzhugh, Tempe, AZ, for Jane Doe One.

Mark G. Worischeck, Steven D. Leach, Brent H. Bryson, Teilborg, Sanders & Parks, P.C., Phoenix, AZ, for Philip J. Garcia.

Brian Michael Goodwin, Lori V. Berke, Goodwin Raup, P.C., Phoenix, AZ, for Foster, Greer and Douglas Unified School Dist. No. 27.

## ORDER

MARQUEZ, Senior District Judge.

Jane Doe One (Plaintiff) brings this action against former Vice–Principal and Athletic Director Phillip J. Garcia (Garcia), Superintendent Jesus Greer, Principal Mike Foster, and the Douglas Unified School District No. 27 (collectively, District) alleging a denial of equal protection and due process as guaranteed by the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983) and sex discrimination in violation of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681).[1]

Plaintiff alleges that while she was a student at Douglas High School (from 1990–1994), Garcia used his position of authority to develop a sexual relationship with her. Garcia employed threats and other forms of coercion to instill duress and fear and prevent her from disclosing the sexual abuse. (Amended Complaint at ¶s XVI, XVII.) Plaintiff alleges that the District failed to take any action to protect or warn her. Additionally, the District actively concealed its knowledge of Garcia's inappropriate conduct. (Amended Complaint at ¶s XV, XXI.)[2]

Presently before the Court are Motions to Dismiss filed by Garcia and the District. Defendants argue that Plaintiff's claims are time barred.

■ If matters outside of the pleadings are submitted, a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is treated as one for summary judgment. Fed.R.Civ.P. 12(b)(6). *Franzi v. Koedyker,* 157 Ariz. 401, 758 P.2d 1303, 1310 (App.1985); *Pritchard v. State of Arizona,* 163 Ariz. 427, 788 P.2d 1178, 1183 (1990).

Here, both parties argue and attach matters outside of the pleadings. The Court will therefore, treat the Motions to Dismiss as Motions for Summary Judgment.

Rule 56(c) of Federal Rules of Civil Procedure provides for summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The party seeking summary judgment carries the burden of showing there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).

Once the moving party has met that burden by presenting evidence which, if uncon-

---

1. Title IX of the Education Amendments of 1972 provides in relevant part, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance ..." 20 U.S.C.A. § 1681(a).

2. While Plaintiff refers in her Amended Complaint to the Districts duty to hire and supervise its teachers (Amended Complaint at ¶ X), she does not specifically allege the state law claims of negligent hiring, retention and supervision.

tradicted, would entitle it to a directed verdict at trial, Rule 56(e) shifts the burden to the nonmoving party to present specific facts showing that such contradiction is possible. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 950–52 (9th Cir .1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). The nonmoving party's evidence is to be taken as true and all inferences are to be drawn in the light most favorable to the nonmoving party. *Eisenberg v. Insurance Co. of North Am.*, 815 F.2d 1285, 1288 (9th Cir.1987).

■ A federal court adjudicating rights under § 1983 and § 1681 adopts the state statute of limitations of the most closely analogous state law claim. *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Bougher v. University of Pittsburgh*, 882 F.2d 74, 77 (3rd Cir.1989). In Arizona, the statute of limitations for personal injury actions is two years. Ariz.Rev.Stat. 12–542 (1992). If a person is under the age of eighteen at the time her cause of action accrues, the statute of limitations period is tolled until she turns eighteen. Ariz.Rev. Stat. 12–502 (1992).

■ In the present case, the alleged sexual relationship between Garcia and the Plaintiff began in 1992. (Affidavit of Elizabeth Ramirez at ¶s 3–4.) Plaintiff reached the age of majority on June 29, 1994. (District's Motion to Dismiss at 3:24.)[3] The two year period from Plaintiff's majority lapsed on June 29, 1996 and Plaintiff filed her lawsuit on May 27, 1997, eleven months beyond the statute of limitations deadline. This evidence, if uncontradicted, would entitle the Defendants to a directed verdict at trial.

■ The burden shifts to the Plaintiff to present specific facts in contradiction. *British Airways Bd.*, 585 F.2d at 950. Further-

more, when a complaint shows on its face that the cause of action is barred by the statute of limitations, the Plaintiff also has the burden to show that the statute should be tolled. *Cooney v. Phoenix Newspapers, Inc.*, 160 Ariz. 139, 770 P.2d 1185, 1187 (App. 1989).

## I. *Garcia*

■ Plaintiff contends that her cause of action against Garcia should be tolled because of duress. Although duress is a recognized basis for equitably tolling a statute of limitations, it is limited in its application. *Almost* without exception, courts have universally rejected the theory that duress tolls the statute of limitations when duress is not an element of the underlying cause of action. *Pahlavi v. Palandjian*, 809 F.2d 938, 942 (1st Cir.1987).

■ Here, while Plaintiff's Complaint alleges that Garcia's duress resulted in physical and psychological injury (Amended Complaint at ¶s XXIV), duress is not an element of any of her claims. Assuming that Arizona would recognize duress as tolling the statute of limitations in certain circumstances, in order to establish duress, a plaintiff must do more than simply allege a subjective fear that retaliation might occur. A plaintiff must show some act or threat by the defendant that precluded the exercise of her free will and judgment and prevented her from exercising her legal rights. *Moses v. Phelps Dodge Corporation*, 818 F.Supp. 1287, 1289 (D.Ariz.1993). A plaintiff must show that a paramount authority prevented her from exercising her legal rights. *Ross v. United States of America*, 574 F.Supp. 536, 542 (S.D.N.Y.1983).

Plaintiff attests that in 1992, Garcia, who was the Vice–Principal of Douglas High School, displayed special attention and made her one of his interns. Garcia gave her gifts and money and excused her from classes

---

**3.** Plaintiff's age of majority, while not supported by competent summary judgment evidence (Fed. R.Civ.P.56(e)), was not contested by the Plaintiff and was thus, considered by the Court in ruling on the present motion. The Court did *not*, however, consider the following: Districts' Exhibits A (police report) and B (police report); Plaintiff's

Exhibits 1 (Dr.'s report), 2 (newspaper article), 4 (newspaper article), 7 (correspondence), 8 (correspondence); the exhibit attached to Plaintiff's Response to Defendant's Garcia's Motion to Dismiss (transcript); and the additional exhibit filed by Plaintiff on March 18, 1998 (property record).

whenever she requested. A sexual relationship developed which lasted approximately five years. During the relationship, Garcia continually threatened to kill himself if Plaintiff reported him. Plaintiff states that she really feared Garcia would hurt himself or her if she revealed the relationship to anyone. In addition to being hot tempered, Garcia often showed Plaintiff his handgun. He followed her, pulled her out of class to visit him, telephoned her and stated that he knew what time she went to bed and what time she awakened. He twice appeared outside her bedroom and tapped at her window. He paged her constantly to find out where she was and who she was with. Garcia told the Plaintiff that he had become friends with her boyfriend so as to keep track of her. In October of 1996, Plaintiff's boyfriend died in his home under what Plaintiff contends were "mysterious circumstances." In January of 1997, Garcia made comments to the Plaintiff which caused her to question whether he was involved in her boyfriends death. The relationship with Garcia ended in January of 1997. (Plaintiff's Affidavit at ¶¶ 2–10.) Plaintiff filed suit in May of 1997 (Complaint.)

 The Court finds that Plaintiff's claim of duress is sufficiently meritorious that it cannot be resolved by summary judgement. Plaintiff's affidavit presents more than a subjective fear that Garcia would retaliate against her if she exercised her legal rights against him. During Plaintiff's minority, when she was a student at Douglas High School, Garcia had a great deal of control over her. He pulled her out of class, followed her, paged her, telephoned her and even appeared at her bedroom window. Garcia was essentially stalking her. Plaintiff knew that Garcia had a gun, she had seen it and Garcia had threatened to use it against himself if she exposed him. Plaintiff's affidavit presents persuasive evidence that Garcia's threatening behavior *continued* on into Plaintiff's majority. Presumably, once the Plaintiff left high school in 1994, Garcia was not able to exert the same control he once had over her, so he befriended her boyfriend. In 1996, Plaintiff's boyfriend died in his home and in January of 1997, Garcia committed his last coercive act against the Plaintiff by im-

plying to her that he had murdered her boyfriend. Four months later, Plaintiff filed the instant lawsuit. Whether or not Garcia was in fact responsible for her boyfriend's death is immaterial. Evidence of Plaintiff's *asserted* fears is adequate to raise a genuine issue of material fact. Whether the Plaintiff's claim of duress tolled the statute of limitations is a question for the jury.

*See also Ulibarri v. Gerstenberger*, 178 Ariz. 151, 871 P.2d 698, 705 (App.1993), *rev. den.*, 186 Ariz. 419, 924 P.2d 109 (1996) (wrongful concealment by means of mental impairment due to hypnosis avowed by plaintiff and supported by affidavit of treating physician, held sufficient to create fact issue as to whether statute of limitations should be tolled); *Jones v. Jones*, 242 N.J.Super. 195, 576 A.2d 316, 321 (1990), *certification den.*, 122 N.J. 418, 585 A.2d 412 (1990) (sexually abused plaintiff's allegations that parent's coercive acts and threats rose to such a level that a person of reasonable firmness in her situation would have been unable to resist, raised unresolved factual issues which could only be decided by way of plenary hearing).

*Compare Moses*, 818 F.Supp. at 1289 (earlier assault by co-employee to demonstrate basis for subjective fear for physical safety and that of family did not constitute sort of "continuing, dire and imminent threat" which would equitably toll running of the limitations period); *Pahlavi*, 809 F.2d at 942 (affidavit contained no allegations of threats or actions by the defendant, his family, or his agents during the limitations period that could have caused plaintiff to be fearful of filing suit for money allegedly owed him); *Murphy v. Merzbacher*, 346 Md. 525, 697 A.2d 861, 868 (1997), *rev. den.* (1997) (no evidence that defendant made threats or engaged in overt acts during three year general limitations period which followed plaintiff's majority; "[i]f the cessation of the defendant's conduct affords the plaintiff ample time thereafter in which to institute his or her action prior to the running of the statute of limitations, he or she cannot raise an estoppel argument to bar a defense of limitations."); *Floyd v. Donahue*, 186 Ariz. 409, 923 P.2d 875, 879 (App.1996) (plaintiff no longer lived with her father and merely alleg-

ing that she forbore filing suit to protect her mother from unpleasant information that may have changed mother's opinion about her husband was not a "specific threat or demonstrable duress," such to apply estoppel); *Nolde v. Frankie,* 190 Ariz. 422, 949 P.2d 511, 512 (App.1997) (statute of limitations not tolled where suit brought many years after occurrence of events of sexual abuse by teacher and threats to remain silent); *Florez v. Sargeant,* 185 Ariz. 521, 917 P.2d 250, 255 (1996) (statute not tolled; no hard evidence that plaintiffs were incapable of carrying on day-to-day affairs of human existence after their alleged abuse and threats which occurred 8 and 18 years earlier; court in dicta stated that plaintiff's claims of fraud and duress not sufficiently meritorious for discussion).[4]

## II. *The District*

Plaintiff contends that her cause of action against the District did not accrue on the date she reached majority but in April of 1997, when she learned that the District failed to act when presented with credible information regarding Garcia's misconduct.

▬▬▬ Under federal law, a cause of action accrues when the plaintiff knew, or should have known, of the defendant's wrongdoing and can successfully maintain a suit in district court. An action cannot be successfully maintained if, at the time the plaintiff becomes aware of the wrong, the plaintiff's damages are not certain to occur or are too speculative to be proven. *Allen v. United Food & Commercial Wkrs. Intern. Union AFL—CIO, CLC,* 43 F.3d 424, 427 (9th Cir.1994).

▬▬ In Arizona, a cause of action accrues when the damaged party realizes she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or

contributed to the damage. Ariz.Rev.Stat. Ann. § 12–821.01(B) (1997). Under this "discovery rule," a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause. The important inquiry in applying the discovery rule is whether the plaintiff's injury or the conduct causing the injury is difficult for the plaintiff to detect. *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of America,* 182 Ariz. 586, 898 P.2d 964, 966–68 (1995).[5]

*See also Kowske v. Life Care Centers of America, Inc.,* 176 Ariz. 535, 863 P.2d 254, 256 (App.1993) (facts giving rise to plaintiffs' cause of action had all been discovered within days of death; only their legal significance required further evaluation; discovery rule did not apply to toll statute of until expert gave opinion that malpractice occurred); *Berry v. Branner,* 245 Or. 307, 421 P.2d 996, 998 (1966) ("To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one. To say to one who has been wronged, 'You had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy,' makes a mockery of the law.") (citation omitted); *Doe v. Miles,* 190 Ariz. 173, 945 P.2d 1304, 1306 (App.1997), *rev. granted* (1997) (plaintiffs knew of injury (HIV infection), what caused injury (factor concentrate), and who caused injury (various producers and healthcare providers); fact that plaintiffs did not know legal significance of defendant's negligence and product's defectiveness did not postpone accrual of claims until then); *Plumeau v. School District # 40, County of Yamhill,* 130 F.3d 432 (9th Cir.1997) (facts held sufficient to apprise plaintiffs of potential claims against district for failure to su-

---

4. In *Florez,* the court also found that the disabling psychological effects of child abuse do not constitute an "unsound mind" for purposes of tolling the statute of limitations pursuant Ariz. Rev.Stat. § 502(A). Because the Plaintiff in the present case is not claiming that Garcia's threats made her unable to manage her affairs and understand her legal rights, *Florez* does not fore-

close Plaintiff's assertion that *duress* should toll the limitations period.

5. Because the Plaintiff knew both the identity and the conduct of her tortfeasor, the *discovery rule* would not toll Plaintiff's claim against Garcia. *Florez,* 917 P.2d at 257.

pervise; plaintiffs knew the abuse took place during school hours and on school property and that the abuser was a school district employee).

 Plaintiff attests that it was not until April of 1997, that she learned (through her lawyer) that the District had been aware of Garcia's misconduct with female students but did nothing to control him. (Plaintiff's Affidavit at ¶ 13.) Plaintiff's counsel conducted an investigation of Garcia's employment with the School District and in April or May of 1997, produced facts which led him to conclude that Plaintiff had a civil cause of action against the District for failure to properly supervise Garcia. (Edward Fizhugh's Affidavit at ¶¶ 2–3.)

The affidavit of Ted McIntyre is supportive of Plaintiff's purported date of discovery. Mr. McIntyre was a teacher at Douglas High School from 1970 through 1995. In April of 1997, Mr. McIntyre was contacted by attorney William Walker reference his knowledge of Garcia's activities. (Ted McIntyre's Affidavit at ¶¶ 4, 19–20.) [6]

On October 15, 1997, Mr. McIntyre executed an affidavit stating that during the 1991–1992 school year, he noticed that groups of high school girls would congregate in Garcia's office during periods of time in the school day when they should have been attending classes. Mr. McIntyre also noticed that there were always an excessive number of female students in Garcia's office who were not performing official functions. He raised the issue with other faculty and the issue was later raised by faculty at an administrative meeting. (Ted McIntyre's Affidavit at ¶¶ 6, 8, 11 .)

During the 1992–1993 school year, Mr. McIntyre attended a monthly department head meeting and heard Principal Foster announce, "You people think I don't know what's going on back there (referring to Garcia and his female aides). I do, and I'm going to take those aides away from him." At the beginning of the 1993 Fall semester, Garcia no longer had any female aides. One month later, however, when Garcia began reporting to Superintendent Greer instead of Principal Foster, Garcia's aides were restored to him. (Ted McIntyre's Affidavit at ¶¶ 14–17.)

According to the Plaintiff, this evidence establishes that the District had actual notice of Garcia's misconduct but failed to act. Because there is no evidence that Plaintiff was privy to the information possessed by the District, Plaintiff argues that she did not learn of the District's direct involvement until her attorney concluded his investigation in April of 1997. It was then that her cause of action accrued. She filed her lawsuit the following month.

The District disputes these facts and argues that the Plaintiff did not exercise reasonable diligence in investigating and pursing her claim against the District. For example, two months after she turned 18, the Plaintiff was interviewed by a police detective about a possible molestation by Garcia on another high school girl. When asked about her relationship with Garcia, Plaintiff denied that Garcia ever tried to have sexual intercourse with her. In support, the District attaches an unauthenticated police report prepared in July of 1994 and asks the Court to find that when Plaintiff lied to the police, she not only expressed her disinterest in pursing a claim against Garcia, but also forfeited her rights to civil redress against *anyone* who may have played a role in facilitating Garcia's alleged abuse.

The Court declines to take the inappropriate role of fact finder and make this conclusion. Additionally, even assuming the police report was in proper evidentiary form, there is no indication in the report that Detective Acosta ever mentioned that *the District* might somehow be involved. When Detective Acosta initiated the interview, he advised Plaintiff only that he "was investigating a possible Child Molestation case and that during the investigation, it was mentioned that Ms. Ramirez might have also been molested by the suspect named as MR. PHIL GARCIA." (Detective Acosta's Miscellaneous Of-

---

6. Mr. Walker is the attorney representing Plaintiff Raquel Zamora in Zamora v. Garcia et. al., 97 CV 207 TUC–ACM. Presumably, Mr. Walker conveyed the information he learned from Ted McIntyre to the attorney in the present case, Mr. Fizhugh.

fense Report at 4.) No mention was made of the District.

The defense further argues that if Garcia's alleged conduct was so clearly open and notorious that it should have caused the District to scrutinize Garcia, then those same facts should have made the Plaintiff aware that she had a cause of action against the District. The defense provides no evidence that Garcia's alleged sexual encounters occurred during school hours or on school property such that in the exercise of reasonable diligence, Plaintiff should have known she had a claim against the District. Nor is there any evidence that Plaintiff was present when the issue of Garcia's conduct was raised to the District at the faculty administrative meeting or monthly department head meeting.

■■■ In Arizona, determination of a claim's accrual date is usually a question of fact, with the inquiry centering on the plaintiff's knowledge of the subject event and resultant injuries, whom the plaintiff believed was responsible, and plaintiff's diligence in pursuing the claim. Application of the discovery rule often depends on resolution of such factual issues and the trial court's function is not to resolve disputed facts. *Logerquist v. Danforth, M.D.,* 188 Ariz. 16, 932 P.2d 281, 287 (App.1996), *rev. den.* (1997).

Summary judgment is inappropriate because disputed issues of material fact exist as to *when* the Plaintiff discovered her cause of action against the District. On the facts of this case, it is not possible to say as a matter of law that the Plaintiff failed to act with reasonable diligence in investigating and pursuing her claims against the District.

Accordingly,

**IT IS ORDERED** that Garcia's Motion to Dismiss/Motion for Summary Judgment (Document 29) is DENIED.

**IT IS FURTHER ORDERED** that the District's Motion to Dismiss/Motion for Summary Judgment (Document 8) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Rule 56(f) Motion to Continue Hearing (Document 15) is DENIED as moot.